CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

07/10/2020

JULIA C. DUDLEY, CLERK
BY: /s/ H. Wheeler
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| BEN GARRISON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.   3:20CV00040 |
| ) | |
| ) | **TRIAL BY JURY** |
| ANTI-DEFAMATION LEAGUE ) | **IS DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

# COMPLAINT

Plaintiff, Ben Garrison, by counsel, files the following Complaint against defendant, Anti-Defamation League ("ADL").

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$10,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from July 10, 2019 until the date of Judgment, (c) costs incurred – arising out of Defendants' defamation, conversion and trespass.

In support of his claims, Plaintiff states the following facts:

## I. INTRODUCTION

1. Plaintiff is a cartoonist who supports the President of the United States.

2. In 2017, Plaintiff drew a cartoon that depicted George Soros ("Soros"), National Security Advisor H.R. McMaster and General David Petraeus as puppets of the "Rothchilds":

1



3. On August 3, 2017, the ADL published an article on its website, entitled "**Anti-Semitism Used in Attack Against National Security Adviser H. R. McMaster**". [https://www.adl.org/blog/anti-semitism-used-in-attack-against-national-security-adviser-h-r-mcmaster (the "ADL Article"). The ADL Article smeared Plaintiff. It contained numerous intentionally false statements about Plaintiff, including:

- "Prominent alt lite blogger and radio host Mike Cernovich … allegedly even commissioned a blatantly anti-Semitic cartoon to use as part of his campaign against McMaster";

- "The thrust of the cartoon is clear: McMaster is merely a puppet of a Jewish conspiracy";

- "Ironically, Garrison has frequently complained that some of his cartoons were being manipulated by others, with anti-Semitic themes added to them. In this instance, however, he displayed a clearly anti-Semitic cartoon on his own website";

- "The anti-Semitic theme of the Garrison cartoon is impossible to miss".

2

ADL simultaneously tweeted the ADL Article to its 166,000 followers on Twitter. [https://twitter.com/ADL/status/893191101649215488].

4. The ADL Article was relied upon by editors of "Wikipedia" to falsely state that Plaintiff "produced cartoons that showcase … anti-Semitic and racist content". [https://en.wikipedia.org/wiki/Ben_Garrison]. The ulterior purpose of the ADL Article was to silence Plaintiff's free speech and his criticism of the Rothschilds and Soros.

5. On July 5, 2019, Plaintiff proudly tweeted that he had been invited by President Trump to the White House ("WH") to attend The Social Media Summit:



3

6. On July 11, 2019, after the ADL complained to the White House that Plaintiff was "anti-Semitic", the White House rescinded the invitation.

7. In this action, Plaintiff seeks money damages for the insult, embarrassment, humiliation, mental suffering, anguish, injury to his name and professional reputation, and loss of business caused by the ADL's defamation.

## II. PARTIES

8. Plaintiff, Ben Garrison ("Garrison"), is a private individual and citizen of Montana. He is an independent political cartoonist. His cartoons have been seen by millions of people around the world. Garrison is neither anti-Semitic nor racist. [https://www.grrrgraphics.com/about; https://www.breitbart.com/tech/2015/12/22/ben-garrison-how-the-internet-made-a-fake-white-supremacist/].

9. Defendant, ADL, is a non-profit corporation organized under the laws of the District of Columbia. Its principal place of business is New York. ADL holds itself out as an "anti-hate organization that seeks to stop the defamation of the Jewish people". In truth, ADL is a tool of the Democratic Party and private corporations, such as Google, to target supporters of President Donald Trump, members of the Republican Party, and conservatives generally.

## III. JURISDICTION AND VENUE

10. The United States District Court for the Western District of Virginia has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. ADL is subject to general jurisdiction and specific jurisdiction in Virginia. It transacts continuous and systematic business in Virginia and committed multiple acts of defamation in whole or part in Virginia. ADL has minimum contacts with Virginia such that the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

12. Venue is proper in the Charlottesville Division of the United States District Court for the Western District of Virginia pursuant to Title 28 U.S.C. § 1391(b)(1).

## IV. STATEMENT OF THE FACTS

13. The ADL is engaged in a targeted campaign of defamation to destroy Garrison's reputation and livelihood. ADL operatives throughout the country have excessively published the false and defamatory statement that Garrison is anti-Semitic. *See, e.g.,* https://twitter.com/egavactip/status/893197548965507072 ("#AntiSemitic Ben Garrison cartoon of 'Rothschild' puppeteer used by Mike Cernovich to attack NSC chief HR McMaster"); https://twitter.com/orensegal/status/893247363590098944 ("Check out our analysis of who is behind the anti-Semitic image & campaign against General HR McMaster"); https://twitter.com/egavactip/status/906212115295428609 ("Actually [ThinkProgress], Ben Garrison *has* done an #antisemitic cartoon https://twitter.com/egavactip/status/948684431937691648 ("And though some of his cartoons have been altered by others, he's done at least one #antiSemitic cartoon himself")]. The defamation campaign continues to the present.

5

14.  Prior to publication of the ADL Article, ADL knew that the Rothschilds controlled Soros and that Soros controlled McMaster. ADL also knew that Garrison's cartoon was ***not*** anti-Semitic and knew that Garrison was not anti-Semitic. [*See* https://www.vice.com/en_us/article/a39k7j/the-anonymous-leak-of-supposed-kkk-names-is-actually-kind-of-lame ("Garrison is not a KKK member, but a few years ago someone altered his drawing the 'March of Tyranny' to include an anti-Semitic drawing of a Jewish person, and the image — as well as other manipulations of his work — circled widely on the internet. (Update: Garrison's name has since been scrubbed from the list.) 'Here's Anonymous not doing their research and buying into it,' Pitcavage[1] said of the Garrison rumor, noting that the list included descriptions of the cartoonist that 'the people trying to frame him were circulating.'")].

15.  ADL's actual malice towards Garrison is further evidenced by the fact ADL trolled Garrison, doctored one of Garrison's cartoons and published it on ADL's website (without Garrison's permission) to make it appear to ADL's donors, members and the public that Garrison was, in fact, anti-Semitic and racist. A side-by-side comparison of Garrison's cartoon (on the left) with ADL's doctored cartoon (on the right) reveals the depth of ADL's actual malice and ill-will for Garrison:

---

[1] Mark Pitcavage is a "senior research fellow, center on extremism" at the ADL.



The doctored image remained prominently displayed on ADL's website for a long time. On July 11, 2019, after Garrison lost the opportunity to attend the Social Media Summit, ADL finally admitted that they had doctored the cartoon. The doctored cartoon, with its hateful content attributed to "Ben Garrison", remains on ADL's website however:



7

[https://www.adl.org/resources/backgrounders/jewish-control-of-the-federal-reserve-a-classic-anti-semitic-myth].

16. Within the past year, the ADL Article has been republished repeatedly and excessively by the ADL and by third-parties, both on the Internet and via social media, *see, e.g.*:

https://www.washingtonexaminer.com/news/artist-accused-of-blatant-anti-semitism-disinvited-from-white-house (July 10, 2019);

https://twitter.com/samthielman/status/1148932096897011714 (July 10, 2019);

https://www.adl.org/blog/cartoonist-of-anti-semitic-image-disinvited-from-white-house-social-summit ("The White House invites, and then disinvites, an artist who drew a 'blatantly anti-Semitic' cartoon to its social media summit) (July 12, 2019);

https://twitter.com/ADL/status/1150466237782269954 (July 14, 2019);

https://twitter.com/egavactip/status/1203345635627417600 (That's a Ben Garrison cartoon. Here is some info about that cartoonist") (December 7, 2019);

https://twitter.com/MFilmest/status/1270763245767397377 (June 10, 2020);

https://twitter.com/KingSkyLord_/status/1275561368977104898 (June 23, 2020).

The American Jewish Congress posted the following statement to its Facebook:



8

17.     In addition to the ADL Article, ADL has published on its website numerous other false and defamatory statements about Garrison, including the following:

- https://www.adl.org/resources/backgrounders/jewish-control-of-the-federal-reserve-a-classic-anti-semitic-myth ("White supremacists and other extremists frequently spread anti-Semitic memes, such as the image above");

- https://www.adl.org/blog/cartoonist-of-anti-semitic-image-disinvited-from-white-house-social-summit ("The White House invites, and then disinvites, an artist who drew a "blatantly anti-Semitic" cartoon to its social media summit");

- https://www.adl.org/blog/far-right-trolls-recast-no-means-no-and-my-body-my-choice-as-anti-immigrant-memes ("At a time when women have become increasingly vocal in addressing critical issues like sexual harassment and sexual violence, reproductive rights, workplace opportunity and equal pay, a group of far right trolls have deliberately appropriated slogans from the women's movement in service of their own xenophobic cause.  The far right campaign appropriates "No Means No" and recasts "My Body My Choice" as "My Borders My Choice."  Both are used in social media and fliering campaigns aimed at immigrants … Prominent far right figures, including Jack Posobiec, Ben Garrison and Peter Sweden, promoted the campaign").

## COUNT I – **DEFAMATION**

18.     Plaintiff restates paragraphs 1 through 17 of this Complaint, and incorporates them herein by reference.

19.     ADL and its agents made and published to third-parties, including, but not limited to, advertisers, subscribers, readers, viewers and followers of ADL, and to print media, mainstream media and social media, numerous false factual statements of and

concerning Garrison. These statements are detailed verbatim above. ADL's false and defamatory statements were published and republished within the past year without privilege, justification or legal excuse of any kind. The false and defamatory statements were not published in good faith or through misinformation or mistake. ADL published the words intentionally to harm Garrison's business and reputation.

20. By publishing the ADL Article and other statements on the Internet and via social media, such as Twitter, ADL knew or should have known that its false and defamatory statements about Garrison would be republished over and over and over by third-parties millions of times to Garrison's detriment and injury. By tweeting the ADL Article and by encouraging others to retweet and post the ADL Article to Twitter, ADL created an unreasonable risk that the defamatory matter in the ADL Article would be communicated by third-parties. Republication in 2019 and 2020 was the natural, foreseeable, reasonably expected and probable consequence of ADL's actions and was actually and/or presumptively authorized by ADL. ADL is liable for the republications of the false and defamatory statements by third-parties.

21. ADL's false statements constitute defamation *per se* or defamation *per quod*. The statements impute to Garrison an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment. ADL's statements also prejudice Garrison in his profession as a cartoonist.

22. ADL's false statements caused Garrison to suffer and incur both presumed and actual damages, including insult, pain, embarrassment, humiliation, and mental suffering, harm to name and reputation, injury to reputation, loss of business and income,

out-of-pocket loss and other actual damages. Garrison was held up to world condemnation, scorn and public humiliation leading up to the Social Media Summit at the White House, and thereafter. He has been forced to endure vicious attacks by Internet trolls as a result of the ADL's publications. Garrison is also a fine artist. He had to leave the first gallery he was in because anonymous Internet trolls began harassing the owner. Echoing ADL, the trolls told her Garrison was a "white supremacist—a "Nazi". Garrison's commercial art business has declined. Few corporate offices will consider hiring him because he is seen as a figure of controversy and reputational risk. Garrison was recently rejected at creators.com syndicate because of the defamation by ADL and republished by CNN. Garrison constantly has to explain that he is not anti-Semitic or a racist. He is treated like damaged goods as a result of ADL's libel. The ADL's attack on his character deeply injured Garrison.

23. ADL directed false and defamatory statements at Garrison as a private individual with the specific intent to harm Garrison's reputation. ADL acted negligently. It lacked reasonable grounds for any belief in the truth of its statements.

24. ADL made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false. ADL acted with actual malice and reckless disregard for the truth for the following reasons:

    a. ADL knew that its statements were false, and pursued a preconceived story line without undertaking any investigation. In 2015, Garrison published his first book, "*Rogue Cartoonist*", in which Garrison clearly explained the fact that he was neither racist nor anti-Semitic. ADL knew from its review of Garrison's book that its statements were false.

   b.  ADL published the preconceived narrative out of a desire to hurt Garrison and undermine the President.

   c.  ADL knowingly presented un-truths and sensational statements in an effort to scare and profit from fear and xenophobia. In Garrison's case, ADL is manufacturing out of whole cloth.

   d.  ADL exhibited extreme bias, ill-will and a desire to hurt Garrison because of Garrison's support for President Trump. ADL chose to manufacture and publish false statements about Garrison and to use unnecessarily strong and violent language, disproportionate to the occasion. ADL did not act in good faith because, in the total absence of evidence, it could not have had an honest belief in the truth of its statements about Garrison.

   e.  ADL doctored at least one of Garrison's cartoons to further its false and malicious narrative that Garrison is anti-Semitic and racist. In spite of Garrison's demand to take down and retract the doctored cartoon, ADL persists with the defamation.

   f.  ADL and its agents repeated, reiterated and excessively republished the ADL Article after its original publication out of a desire to injure Garrison and to spread the poison in the pool.

  25.  As a direct result of ADL's defamation, Garrison suffered presumed damages and actual damages, including, but not limited to, insult, pain and suffering, emotional distress and trauma, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to personal and professional reputations, loss of enjoyment of life, loss of business and income, diminished future earning

capacity, out-of-pocket expenses and costs, in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

### COUNT II – CONVERSION

26.  Plaintiff restates paragraphs 1 through 25 of this Complaint, and incorporates them herein by reference.

27.  ADL used Garrison's cartoon's and wrongfully exercised and assumed authority over them without Garrison's consent. ADL wrongfully exerted dominion over Garrison's personal property in denial of, or inconsistent with, Garrison's rights and interests.

28.  ADL's actions constitute conversion.

29.  ADL's acted with spite, ill-will and malice towards Garrison in misappropriating Garrison's property. ADL knowingly and willfully converted Garrison's property, and acted under circumstances amounting to a willful and wanton disregard of Garrison's rights and interests.

30.  As a direct result of ADL's conversion, Garrison suffered damage and incurred loss, including, but not limited to, loss of business and income, impairment to the condition, quality and or value of Garrison's cartoons, attorney's fees, court costs, and other out-of-pocket expenses and damages in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

### COUNT III – TRESPASS TO CHATTELS

31.  Plaintiff restates paragraphs 1 through 30 of this Complaint, and incorporates them herein by reference.

32.  Garrison has and holds a property interest in his cartoons.

33. ADL unlawfully used Garrison's property without legal right, authorization or consent, and profited from such unlawful use.

34. ADL's acts constitute willful acts of trespass.

35. As a direct result of ADL's trespass, Garrison suffered damage and incurred loss, including, but not limited to, loss of business and income, impairment to the condition, quality and or value of Garrison's cartoons, attorney's fees, court costs, and other out-of-pocket expenses and damages in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

## COUNT IV – PERMANENT INJUNCTION

36. Plaintiff restates paragraphs 1 through 35 of this Complaint, and incorporates them herein by reference.

37. In spite of Garrison's demand, ADL continues to unlawfully use Garrison's name and cartoons in its trade or business, including to defame Garrison.

38. Garrison requests the Court to permanently enjoin and order ADL to cease and desist from any further use of Garrison's name and property. Garrison further requests that ADL be enjoined to deactivate the hyperlinks to the ADL Article and to the other defamatory statements published on ADL's website and to delete the corresponding tweets.

39. Without Court intervention and an injunction, Garrison will suffer actual and irreparable injury to his property interests.

40. There is a substantial likelihood that Garrison will succeed on the merits of his claims, as ADL has no right to use Garrison's name or his cartoons. Garrison does not have an adequate remedy at law.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Ben Garrison, respectfully requests the Court to enter Judgment against ADL as follows:

A. Compensatory damages in the amount of $10,000,000.00 or such greater amount as is determined by the Jury;

B. Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

C. Prejudgment interest from July 10, 2019 until the date Judgment is entered at the maximum rate allowed by law;

D. Postjudgment interest at the maximum rate allowed by law;

E. Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:   July 10, 2020

BEN GARRISON

By: */s/ Steven S. Biss*
Steven S. Biss, Esquire
(Virginia State Bar No. 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:   (804) 501-8272
Facsimile:   (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*