**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| BEN GARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  3:20-cv-00040-GEC |
| | ) | |
| ANTI-DEFAMATION LEAGUE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**
**OR TRANSFER TO THE DISTRICT OF COLUMBIA,**
**OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

DAVIS WRIGHT TREMAINE LLP
Patrick John Curran Jr. (VA Bar No. 86144)
Nathan Siegel (*pro hac vice* pending)
Alison Schary (*pro hac vice* pending)
1301 K Street, NW, Suite 500 East
Washington, DC  20005
Ph: 202-973-4200
Fax: 202-973-4499
patcurran@dwt.com
nathansiegel@dwt.com
alisonschary@dwt.com
*Counsel for Defendant Anti-Defamation League*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

    A.    The Parties ............................................................................................... 3

    B.    The Rothschilds Cartoon and the 2017 ADL Article ............................. 3

    C.    Garrison Is Disinvited from the White House Social Media Summit .................... 5

    D.    Garrison Brings This Lawsuit .................................................................. 6

ARGUMENT ................................................................................................................. 7

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER ADL UNDER FED. R. CIV. P. 12(B)(2) ................................................................................. 7

    A.    This Court Lacks General Jurisdiction Over ADL ................................. 9

    B.    This Court Lacks Specific Jurisdiction Over ADL ............................... 10

    C.    The Exercise of Jurisdiction Would Also Be Constitutionally Unreasonable ...... 14

II.    VENUE IS IMPROPER IN THIS DISTRICT UNDER FED. R. CIV. P. 12(B)(3) ........ 15

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF PURSUANT TO FED. R. CIV. P. 12(B)(6) ................................................................................ 16

    A.    Plaintiff Fails to State A Claim for Defamation ................................... 17

        1.    The 2019 ADL News Item's Criticism of the Rothschilds Cartoon Fails to Support a Defamation Claim .......................... 17

            a.    Characterizing the Rothschilds Cartoon as "Anti-Semitic" Is Constitutionally Protected Opinion .......................... 17

            b.    The Complaint Does Not Plausibly Allege ADL Criticized the Cartoon With Actual Malice .......................... 21

                (1)    Mr. Garrison is a Limited-Purpose Public Figure ............. 21

                (2)    The Complaint Fails to Plausibly Plead Actual Malice .......................................................... 24

            c.    None of the Other Assorted Statements Challenged by Mr. Garrison Support a Claim for Defamation Claim for Independent Reasons ...................................... 27

                (1)    Tweets Allegedly by ADL About the Rothschilds' Cartoon ......................................................... 27

                (2)    Statements By Third Parties Referencing the 2017 ADL Article ............................................ 28

                (3)    Additional ADL Blog Posts ............................................. 29

      B.      Garrison's Remaining Claims (Counts II-IV) Fail as Well ................................... 31

CONCLUSION ........................................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acken v. Kroger Co.*,
  58 F. Supp. 3d 620 (W.D. Va. 2014) ......................................................................32

*Adhikari v. KBR, Inc.*,
  No. 1:15-cv-1248, 2016 WL 4162012 (E.D. Va. Aug. 4, 2016) ............................15

*Adler v. Condé Nast Publ'ns, Inc.*,
  643 F. Supp. 1558 (S.D.N.Y. 1986).......................................................................23

*Al Shimari v. CACI Int'l, Inc.*,
  933 F. Supp. 2d 793 (E.D. Va. 2013) ....................................................................17

*Alexander v. Avenue*,
  --- F. Supp. 3d ---, 2020 WL 4035551 (E.D. Va. July 17, 2020)...........................7

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
  293 F.3d 707 (4th Cir. 2002) ....................................................................11, 12, 14

*America Online v. LCGM, Inc.*,
  46 F. Supp. 2d 444 (E.D. Va. 1998) ......................................................................32

*Arpaio v. Zucker*,
  414 F. Supp. 3d 84 (D.D.C. 2019) .........................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................17, 24, 25, 32

*Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*
  283 F.3d 208 (4th Cir. 2002) .................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................. *passim*

*Biospherics v. Forbes, Inc.*,
  151 F.3d 180 (4th Cir. 1998) .................................................................................18

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015)...................................................................................25

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015),
  *and aff'd*, 622 F. App'x 67 (2d Cir. 2015)..............................................................24

iii

*Bose Corp. v. Consumer Union of U.S., Inc.*,
  466 U.S. 485 (1984)...................................................................................24

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  137 S. Ct. 1773 (2017)...............................................................................11

*Brittle v. Warner Bros. Entm't, Inc.*,
  No. 3:16-cv-00908, 2017 WL 11503437 (E.D. Va. Aug. 28, 2017) ........................................32

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976)...........................................................................20

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................11, 14

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
  720 F. App'x 87 (2d Cir. 2018) ......................................................................25

*CACI Premier Tech., Inc. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ................................................................17, 18, 21

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ......................................................................8, 12

*Carr v. Forbes, Inc.*,
  259 F.3d 273 (4th Cir. 2001) ........................................................................22

*Carroll v. Vinnell Arabia, LLC*,
  No. 1:15-cv-815, 2015 WL 5579917 (E.D. Va. Sept. 22, 2015) ..........................................9

*Celle v. Filipino Reporter Enters., Inc.*,
  209 F.3d 163 (2d Cir. 2000)..........................................................................30

*CFA Inst. v. Inst. of Chartered Fin. Analysts of India*,
  551 F.3d 285 (4th Cir. 2009) ........................................................................11

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ...............................................................18, 30, 31

*Christen v. iParadigms, LLC*,
  No. 1:10-cv-620, 2010 WL 3063137 (E.D. Va. Aug. 4, 2010) ........................................32, 33

*Church of Scientology Int'l v. Daniels*,
  992 F.2d 1329 (4th Cir. 1993) .......................................................................24

*Coastal Video Commc'ns Corp. v. Staywell Corp.*,
  59 F. Supp. 2d 562 (E.D. Va. 1999) ..................................................................10

*Consulting Eng'rs v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) ........................................................................11, 14

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  406 F. Supp. 3d 1258 (M.D. Ala. 2019),
  *appeal docketed*, No. 19-14125 (11th Cir. Oct. 18, 2019)......................................19

*Corsi v. Stone*,
  No. 19-cv-324, 2020 WL 999053 (D.D.C. Mar. 1, 2020) ........................................16

*Ctr. for Immigration Studies v. Cohen*,
  No. CV 19-0087, 2019 WL 4394838 (D.D.C. Sept. 13, 2019),
  *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020),
  *cert. denied*, No. 19-1324, 2020 WL 5882275 (U.S. Oct. 5, 2020).........................19

*Curry v. Trans Union, LLC*,
  No. 3:16-cv-824, 2017 WL 2058266 (E.D. Va. Apr. 26, 2017), *R. & R.*
  *adopted*, No. 3:16-cv-824, 2017 WL 2056176 (E.D. Va. May 12, 2017) .........................15, 16

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..............................................................................................9, 10

*Doe #1 v. Syracuse Univ.*,
  468 F. Supp. 3d 489 (N.D.N.Y. 2020) ......................................................................19

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016).........................................................................................25

*Edwards v. Schwartz*,
  378 F. Supp. 3d 468 (W.D. Va. 2019) .................................................................13, 24

*Eramo v. Rolling Stone LLC*,
  209 F. Supp. 3d 862 (W.D.Va. 2016) ........................................................................18

*Falls v. Katmai Support Servs., LLC*,
  No. 3:14-cv-315, 2014 WL 6900916 (E.D. Va. Dec. 5, 2014)...................................8

*Falls v. Sporting News Publ'g Co.*,
  714 F. Supp. 843 (E.D. Mich. 1989), *aff'd*, 899 F.2d 1221 (6th Cir. 1990) .........................23

*Faltas v. State Newspaper*,
  928 F. Supp. 637 (D.S.C. 1996), *aff'd*, 155 F.3d 557 (4th Cir. 1998)....................23

*Fed. Ins. Co. v. Smith*,
  144 F. Supp. 2d 507 (E.D. Va. 2001) ........................................................................31

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) .....................................................................................10

*FireClean, LLC v. Tuohy*,
    No. 1:16-cv-0294, 2016 WL 3952093 (E.D. Va. July 21, 2016)............................................13

*Fitzgerald v. Penthouse Int'l, Ltd.*,
    691 F.2d 666 (4th Cir. 1982) ....................................................................................................22

*Foster Made, LLC v. Foster*,
    No. 3:17-cv-775, 2018 WL 4693810 (E.D. Va. Sept. 28, 2018) ............................................14

*Ganske v. Mensch*,
    --- F. Supp. 3d ---, 2020 WL 4890423 (S.D.N.Y. Aug. 8, 2020) ............................................30

*Gasner v. Cty. of Dinwiddie*,
    162 F.R.D. 280 (E.D. Va. 1995) ................................................................................................3

*Gilmore v. Jones*,
    370 F. Supp. 3d 630 (W.D. Va. 2019) .......................................................................................9

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011).............................................................................................................9, 10

*Halzack Watkins v. Educ. Credit Mgmt. Corp.*,
    No. 2:10-cv-540, 2011 WL 2015479 (E.D. Va. May 12, 2011)..............................................33

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)..................................................................................................................26

*Haynes v. Alfred Kopf, Inc.*,
    8 F.3d 1222 (7th Cir. 1993) .....................................................................................................20

*Holmseth v. Picazio*,
    No. 3:18-cv-00361, ECF No. 23 (E.D. Va. Dec. 27, 2018).......................................................8

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).............................................................................................................9, 15

*Jackson v. Liberty Univ.*,
    2017 WL 3326972 (W.D. Va. Aug. 3, 2017) ..........................................................................30

*Knight v. Doe*,
    No. 1:10-cv-887, 2011 WL 2471543 (E.D. Va. June 21, 2011)..............................................12

*Lerman v. Flynt Distrib. Co.*,
    745 F.2d 123 (2d Cir.1984)......................................................................................................23

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003) ...............................................................................................26

*Lokhova v. Halper*,
  441 F. Supp. 3d 238 (E.D. Va. 2020) ...............................................................28, 31

*Loven v. Romanowski*,
  No. 2:04-cv-00108, 2005 WL 2931996 (W.D. Va. Nov. 4, 2005) ...........................................17

*Masson v. New Yorker Magazine Inc.*,
  501 U.S. 496 (1991) ...........................................................................24

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ...................................................................25, 26, 32

*McDonald v. Wise*,
  769 F.3d 1202 (10th Cir. 2014) ...................................................................25

*McFarlane v. Esquire Magazine*,
  74 F.3d 1296 (D.C. Cir. 1996) ...................................................................24

*McNaughton v. De Blasio*,
  644 F. App'x 32 (2d Cir. 2016) ...................................................................25

*McNeil v. Biaggi Prods., LLC*,
  No. 3:15-cv-751, 2017 WL 2625069 (E.D. Va. June 16, 2017)...............................................13

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...................................................................24, 26

*Microstrategy, Inc. v. Netsolve, Inc.*,
  368 F. Supp. 2d 533 (E.D. Va. 2005) ...................................................................33

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)...........................................................................17

*Moldea v. N.Y. Times Co.*,
  15 F.3d 1137 (D.C. Cir.), *modified*, 22 F.3d 310 (D.C. Cir. 1994) .........................................18

*Mylan Labs, Inc. v. Akzo, N.V.*,
  2 F.3d 56 (4th Cir. 1993) ...........................................................................8

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...........................................................................21, 24

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Co.*,
  951 F.3d 952 (8th Cir. 2020) ...................................................................25

*Nunes v. Cable News Network, Inc.*,
  No. 3:19-cv-889, 2020 WL 2616704 (E.D. Va. May 22, 2020)................................................7

*Nunes v. WP Co., LLC*,
   No. 3:20-cv-146, 2020 WL 2616707 (E.D. Va. May 22, 2020) ............................................7

*Nungesser v. Columbia Univ.*,
   244 F. Supp. 3d 345 (S.D.N.Y. 2017) ......................................................................................25

*O'Donnell v. CBS, Inc.*,
   782 F.2d 1414 (7th Cir. 1986) .................................................................................................23

*OpenRisk, LLC v. MicroStrategy Servs. Corp.*,
   876 F.3d 518 (4th Cir. 2017) ...................................................................................................33

*Perrott v. Coffee*,
   No. 3:19-cv-511, 2019 WL 6842536 (E.D. Va. Dec. 16, 2019) .................................................7

*Phillips v. Uber Techs., Inc.*,
   No. 3:15-cv-544, 2016 WL 165024 (E.D. Va. Jan. 13, 2016) ...................................................8

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ...................................................................................................25

*Potter v. Associated Press*,
   No. 3:15-cv38, 2015 WL 4393401 (E.D. Va. 2015).................................................................27

*Price v. Waste Mgmt., Inc.*,
   No. ELH-13-02535, 2014 WL 1764722 (D. Md. Apr. 30, 2014)..............................................9

*Raible v. Newsweek, Inc.*,
   341 F. Supp. 804 (W.D. Pa. 1972).........................................................................................20

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   No. CV 116-071, 2017 WL 2126323 (S.D. Ga. May 16, 2017).............................................16

*River Cmty. Bank, N.A. v. Bank of N. Carolina*,
   No. 4:14-cv-00048, 2014 WL 7240344 (W.D. Va. Dec. 18, 2014) ..........................................8

*Saudi v. Northrop Grumman Corp.*,
   427 F.3d 271 (4th Cir. 2005) ...................................................................................................11

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012)......................................................................................................25

*Seaman v. IAC/InterActiveCorp, Inc.*,
   No. 3:18-cv-401, 2019 WL 1474392 (E.D. Va. Apr. 3, 2019).................................................7

*Seaman v. YouTube, LLC*,
   No. 3:18-cv-00833, ECF No. 20 (E.D. Va. Apr. 5, 2019) .......................................................7

*Smith v. Sch. Dist. of Phila.*,
  112 F. Supp. 2d 417 (E.D. Pa. 2000) ....................................................................20

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)...........................................................................................24

*Standing Comm. on Discipline v. Yagman*,
  55 F.3d 1430 (9th Cir. 1995) ........................................................................18, 19

*Stevens v. Tillman*,
  855 F.2d 394 (7th Cir. 1988) ...............................................................................20

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987)..............................................................................31

*Thousand Oaks Barrel Co. v. Deep S. Barrels LLC*,
  241 F. Supp. 3d 708 (E.D. Va. 2017) ...................................................................10

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) ..................................................................................9

*Trandes Corp. v. Guy F. Atkinson*,
  996 F.2d 655 (4th Cir. 1993) .................................................................................33

*U.S. ex rel. Berge v. Bd. of Trs. of Univ. of Ala.*,
  104 F.3d 1453 (4th Cir. 1997) ...............................................................................33

*Virginia Citizens Def. League v. Couric*,
  910 F.3d 780 (4th Cir. 2018) .................................................................................29

*Walden v. Fiore*,
  571 U.S. 277 (2013)................................................................................................9

*Worrell-Payne v. Gannett Co.*,
  49 F. App'x 105, 2002 WL 31246121 (9th Cir. 2002) .........................................26

*Young v. New Haven Advocate*,
  315 F.3d 256 (4th Cir. 2002) ...............................................................9, 12, 13, 14

**State Cases**

*Condit v. Clermont Cty. Review*,
  675 N.E.2d 475 (Ohio Ct. App. 1996) ..................................................................20

*Jones v. City of Phila.*,
  893 A.2d 837 (Pa. Comm. Ct. 2006) .....................................................................19

*Maule v. NYM Corp.*,
  54 N.Y.2d 880 (1981) ............................................................................................23

*Rosen v. Am. Israel Pub. Affairs Comm., Inc.*,
    41 A.3d 1250 (D.C. 2012) .................................................................30

*Russell v. Davies*,
    97 A.D.3d 649 (N.Y. App. Div. 2012) .............................................19

*Schaecher v. Bouffault*,
    290 Va. 83 (2015) ...............................................................................30

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (N.Y. App. Div. 2015) .........................................19

*United Leasing Corp. v. Thrift Ins. Corp.*,
    247 Va. 299 (1994) .............................................................................32

*Ward v. Zelikovsky*,
    643 A.2d 972 (N.J. 1994) ..................................................................20

*Webb v. Virginian-Pilot Media Cos.*,
    287 Va. 84 (2014) .........................................................................29, 30

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................17, 21

U.S. Const. Due Process Clause .................................................................8, 9

**Federal Statutes**

17 U.S.C. § 301 ....................................................................................3, 32, 33

28 U.S.C. § 1391 ...................................................................................2, 15, 16

28 U.S.C. § 1406(a) .................................................................................15, 16

**State Statutes**

Va. Code § 8.01-247 ......................................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(2).............................................................................1, 7

Fed. R. Civ. P. 12(b)(3).....................................................................1, 15, 16

Fed. R. Civ. P. 12(b)(6).................................................................1, 2, 16, 17

Defendant Anti-Defamation League ("ADL" or "Defendant") respectfully submits this Memorandum of Law in support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and/or for Improper Venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

One of the most enduring anti-Semitic tropes of all time has been that Jews secretly control international finance and conspire to manipulate governments headed by persons who are not Jewish. In particular, anti-Semitic conspiracy theorists have long accused the Rothschild family, whose members founded several European banks in the nineteenth century, of being the masterminds of this secret Jewish cabal.[1] In 2017, Plaintiff Ben Garrison drew a cartoon depicting then-National Security Advisor H.R. McMaster and Gen. David Petraeus, who are not Jewish, as puppets controlled by George Soros, a prominent European Jewish financier, who in turn is depicted as a puppet controlled by a ghoulish arm labeled "Rothschilds" (the "Rothschilds Cartoon"). Compl. ¶ 2. After the cartoon was disseminated, the Anti-Defamation League ("ADL"), a century-old organization dedicated to fighting hate and bigotry, posted on its website an article criticizing the cartoon as "clearly anti-Semitic," opining that "[t]he thrust of the cartoon is clear: McMaster is merely a puppet of a Jewish conspiracy."

Now, three years after ADL criticized his cartoon, Mr. Garrison brings suit over the 2017 ADL article, allegedly as "republished" by a 2019 ADL blog post after Garrison was disinvited from a White House summit on social media. He claims ADL's criticism that the Rothschilds Cartoon is "anti-Semitic" is false and defamatory to him. Even more remarkably, Mr. Garrison premises his defamation claim on the assertion that it is a *fact* that "ADL knew that the Rothschilds

---

[1] *See, e.g.*, https://www.britannica.com/story/where-do-anti-semitic-conspiracy-theories-about-the-rothschild-family-come-from; *see also* https://encyclopedia.ushmm.org/content/en/article/protocols-of-the-elders-of-zion.

controlled Soros and that Soros controlled McMaster" (Compl. ¶ 14) – a statement one might more readily expect to find in the *Protocols of the Elders of Zion*, rather than in a document filed in a United States federal court.

Mr. Garrison's Complaint should be dismissed for several independent reasons. *First*, this Court lacks personal jurisdiction over ADL. Neither party is a resident of Virginia, and nothing about this case has any nexus to Virginia. It is well established that simply publishing on the internet does not give rise to jurisdiction in every state. The only reason this case appears to have been filed here is that Mr. Garrison's counsel has an office in Charlottesville. That is plainly insufficient, and the Court can and should dismiss on this basis alone.

*Second*, for similar reasons venue in this district is clearly improper. ADL does not reside here, nor did any of the "events or omissions giving rise to the claim" allegedly occur here. 28 U.S.C. § 1391(b)(1)&(2). This Court should therefore either dismiss this case or exercise its discretion to transfer the case to the United States District Court for the District of Columbia (or, alternatively, the Southern District of New York), where venue would be proper.

*Third*, the Complaint fails on the merits under Rule 12(b)(6). ADL's criticism of Mr. Garrison's cartoon as "anti-Semitic" is a classic example of constitutionally protected opinion. Moreover, as a public figure, Garrison must also plead plausible allegations that ADL published its critique of the cartoon with actual malice. It would be difficult to imagine a more implausible allegation of constitutional malice under the *Iqbal/Twombly* standard than the assertion that ADL knew that the Rothschilds control Soros who controls McMaster. Further, several of the additional statements that Garrison purports to challenge are not actionable because they are either not defamatory, are not statements by ADL, and/or were published outside the one-year statute of

2

limitations.  Finally, Mr. Garrison's claims for conversion and trespass to chattels independently fail to state a claim and are preempted by Section 301 of the Copyright Act.

**STATEMENT OF FACTS**

**A.      The Parties**

Defendant ADL is a nonprofit corporation organized under the laws of the District of Columbia, with its principal place of business in New York.  Compl. ¶ 9.  Founded in 1913, ADL works to combat anti-Semitism and all other manifestations of bigotry and hatred.  *Id.*[2]

Plaintiff Ben Garrison is a political cartoonist and citizen of Montana who draws "politically incorrect cartoons the mainstream media won't run."  Compl. ¶ 8; Declaration of Patrick John Curran Jr. ("Curran Decl."), Ex. 1.[3]  He describes his work as "high impact political art to expose the corruption of the Deep State and their enablers, the Fake News Media."  *Id.*  Mr. Garrison published a book in 2015, *Rogue Cartoonist*, describing his experience dealing with internet trolls on message boards who regularly created Nazi-themed memes with his persona and shared altered versions of his cartoons with anti-Semitic themes.  Compl. ¶ 24(a).

**B.      The Rothschilds Cartoon and the 2017 ADL Article**

In 2017, Mr. Garrison published the Rothschilds Cartoon, which depicts then-National Security Adviser H.R. McMaster and General David Petraeus as marionette puppets controlled by George Soros, who is depicted as a puppet controlled by a disembodied green, decrepit hand labeled "Rothschilds."  A copy of the Rothschilds Cartoon is included in Paragraph 2 of Plaintiff's Complaint:

---

[2] *See also* https://www.adl.org/who-we-are.

[3] Exhibit 1 to the Curran Declaration is a copy of the website page https://grrrgraphics.com/about/, which is cited by Plaintiff in Paragraph 8 of the Complaint.  This document, like all of the other publications "quoted, relied upon, or incorporated by reference in the complaint," may be considered on a motion to dismiss without conversion to summary judgment.  *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

3



On August 3, 2017, ADL published an article on its website titled "Anti-Semitism Used in Attack Against National Security Adviser H. R. McMaster" (the "2017 ADL Article").  Compl. ¶ 3; Curran Decl. Ex. 2.  The 2017 ADL Article included an image of the Rothschilds Cartoon and explained why ADL considers the cartoon's imagery to be "blatantly anti-Semitic":

> The Garrison cartoon features a stage with McMaster and retired general David Petraeus as puppets being manipulated by left-leaning philanthropist George Soros, perceived as a major villain across the far right spectrum in the United States and the subject of many conspiracy theories.  Soros, who is Jewish, is himself depicted in the cartoon with puppet strings, being guided by a greenish hand and arm labeled "Rothschilds," the name of a Jewish family long involved in the banking industry.  The thrust of the cartoon is clear: McMaster is merely a puppet of a Jewish conspiracy.

The 2017 ADL Article noted that while Mr. Garrison "has frequently complained that some of his cartoons were being manipulated by others, with anti-Semitic themes added to them," this cartoon was *not* manipulated; it was created by Mr. Garrison.  The article further reports that the cartoon was received by members of the public as anti-Semitic, resulting in complaints on social media.

4

The 2017 ADL Article also opined that even Mike Cernovich, who commissioned the cartoon, may have been concerned about the cartoon's anti-Semitic motif, because "after the image's debut on the McMasterLeaks website, Cernovich subsequently replaced it with a cropped version that excised the Rothschild reference while keeping the Soros as puppetmaster imagery, making the anti-Semitic nature of the cartoon somewhat less overt."  At the same time, ADL notes, the original Rothschilds Cartoon was shared widely on internet message boards including Reddit's "/r/forwardsfromHitler" subreddit.  ADL reported that social media accounts were "shar[ing] their own anti-Semitic reactions" to the cartoon, such as retweeting it with anti-Semitic tropes like the "echo" symbol for Soros and the Rothschilds, and included a screenshot of one such example.

Mr. Garrison never sued over the ADL Article when it was published in 2017.

### C.  Garrison Is Disinvited from the White House Social Media Summit

In July 2019, President Trump convened a Social Media Summit at the White House.  Mr. Garrison received an invitation to the summit and tweeted a copy of it.  The invitation prompted critical coverage highlighting his Rothschilds Cartoon from 2017.[4]  The White House rescinded Mr. Garrison's invitation.  *See* Compl. ¶¶ 5-6.

On July 12, 2019, ADL published a short news item in its "Weekly Wrap Up" blog post reporting that the "The White House invite[d], and then disinvite[d], an artist who drew a 'blatantly anti-Semitic' cartoon to its social media summit" (the "2019 ADL News Item").  Compl. ¶¶ 16, 17; Curran Decl. Ex. 3.  The 2019 ADL News Item also contained several links to information explaining to the reader why it characterized the Rothschilds' Cartoon as "blatantly anti-Semitic."

---

[4] *See, e.g.*, https://time.com/5621558/trump-cartoonist-anti-semitic-ben-garrison-social-media-summit/;
https://www.huffpost.com/entry/anti-semitism-cartoonist-white-house-trump-adl_n_5d21219ae4b0f3125685269d;
https://twitter.com/jaketapper/status/1147584776737624064;
https://twitter.com/yashar/status/1148577727416537089.

- The 2019 ADL News Item linked to an online news article from the Jewish Telegraph Agency ("JTA") about the rescinded invitation, which included extensive information about the controversy over the cartoon, including comments from Garrison giving his side of the story. Curran Decl. Ex. 4. Garrison denied to the JTA that his cartoon was anti-Semitic because he claimed it is "historical fact" that the Rothschild family was "instrumental in the behind-the-scenes creation of the Federal Reserve." *Id.*

- The 2019 ADL News Item also linked to the 2017 ADL Article.

- The 2019 ADL News Item also linked to another ADL blog post titled "Jewish 'Control' of the Federal Reserve: A Classic Antisemitic Myth" (the "Explainer"). Curran Decl. Ex. 5. The post explained the history behind the anti-Semitic narrative that Jews – and specifically the Rothschild family – "control" financial and political institutions. One section of that post detailed how, since at least 1903, the allegation that the Rothschilds control the Federal Reserve has been a staple of anti-Semitic literature. The first page of the Explainer included an example of anti-Semitic imagery accusing Jews of controlling the Federal Reserve and world finance. The caption below the image explained that the original version of the cartoon was not anti-Semitic, but it had been doctored to look like an anti-Semitic meme.

### D.    Garrison Brings This Lawsuit

Mr. Garrison filed this suit on July 10, 2020, exactly one year after public reports that his invitation to the White House was rescinded. Mr. Garrison claims that he was defamed by the 2017 ADL Article and that ADL is "engaged in a targeted campaign of defamation" by calling him "anti-Semitic." Compl. ¶ 13. In support of this claim, he cites a number of tweets and articles

by third parties, as well as ADL tweets from prior to July 10, 2019. The statements at issue from

the 2017 ADL Article are set out in Paragraph 3 of the Complaint, while the other statements

purportedly at issue in this case are listed in Paragraphs 13, 16 and 17, including the 2019 ADL

News Item. Mr. Garrison alleges that ADL "knew that the Rothschilds controlled Soros and that

Soros controlled McMaster." Compl. ¶ 14.

Along with his defamation claim, Mr. Garrison asserts claims for "conversion" and

"trespass to chattels" in relation to unspecified "use" of his cartoons by ADL.

## ARGUMENT

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER ADL UNDER FED. R. CIV. P. 12(B)(2)

This case is merely the latest in a string of cases that Plaintiff's counsel has filed in Virginia

courts that have no nexus to the Commonwealth. Recently, Judge Payne in the Eastern District of

Virginia warned Plaintiff's counsel that he had "significant concerns about forum shopping" and

noted that the Court had "explained to [Mr. Biss] on numerous occasions[] that the 'Court cannot

stand as a willing repository for cases which have no real nexus to this district.'" *Nunes v. WP

Co., LLC*, No. 3:20-cv-146, 2020 WL 2616707, at \*6 (E.D. Va. May 22, 2020) (citation omitted)

(transferring case to District Court for the District of Columbia); *see also Nunes v. Cable News

Network, Inc.*, No. 3:19-cv-889, 2020 WL 2616704, at \*6 (E.D. Va. May 22, 2020) (transferring

case to Southern District of New York). Over just the past couple of years, at least a half-dozen

cases filed by Plaintiff's counsel in Virginia courts have been dismissed for lack of personal

jurisdiction and/or transferred to other federal districts.[5]

---

[5] *See, e.g.*, *Alexander v. Avenue*, --- F. Supp. 3d ---, 2020 WL 4035551, at \*5 (E.D. Va. July 17, 2020) (dismissing defamation and tortious interference suit over online news articles and tweets for lack of personal jurisdiction); *Perrott v. Coffee*, No. 3:19-cv-511, 2019 WL 6842536, at \*5 (E.D. Va. Dec. 16, 2019) (dismissing defamation suit for lack of personal jurisdiction and noting that dismissal for improper venue would be warranted in the alternative); *Seaman v. IAC/InterActiveCorp, Inc.*, No. 3:18-cv-401, 2019 WL 1474392, at \*8 (E.D. Va. Apr. 3, 2019) (transferring defamation case to Southern District of New York); *Seaman v. YouTube, LLC*, No. 3:18-cv-00833, ECF No. 20 (E.D.

This case fares no better, and indeed it may well be the most extreme example of the  cases Plaintiff's counsel has filed that have no relationship to this district or the Commonwealth.  As the plaintiff, Mr. Garrison bears the burden to allege and ultimately prove the grounds for personal jurisdiction by a preponderance of the evidence.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  He is a Montana resident who is suing a nonprofit organization resident in D.C. and New York over internet postings that never mention Virginia, and he has not come close to meeting that burden.  Mr. Garrison's failure to even make out a *prima facie* case of personal jurisdiction warrants dismissal.  *See Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

In determining whether a plaintiff has made out a *prima facie* case of personal jurisdiction, "the court does not need to 'credit conclusory allegations or draw farfetched inferences.'"  *River Cmty. Bank, N.A. v. Bank of N. Carolina*, No. 4:14-cv-00048, 2014 WL 7240344, at *3 (W.D. Va. Dec. 18, 2014) (citation omitted).  Yet "conclusory allegations" are all that Mr. Garrison offers.  He does not recite *any facts* that would potentially support the assertion of jurisdiction.  Instead, he simply recites the legal standard:

> ADL is subject to general and specific jurisdiction in Virginia.  It transacts continuous and systematic business in Virginia and committed multiple acts of defamation in whole or part in Virginia.  ADL has minimum contacts with Virginia such that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution.

Compl. ¶ 11.  Such "formulaic recitation of the elements of personal jurisdiction" are "neither entitled to a presumption of validity nor sufficient by itself to support a finding that Defendant is

---

Va. Apr. 5, 2019) (transferring defamation case to the Northern District of California); *Holmseth v. Picazio*, No. 3:18-cv-00361, ECF No. 23 (E.D. Va. Dec. 27, 2018) (transferring defamation case to Southern District of Florida); *Phillips v. Uber Techs., Inc.*, No. 3:15-cv-544, 2016 WL 165024, at *3 (E.D. Va. Jan. 13, 2016) (transferring case to Southern District of New York); *Falls v. Katmai Support Servs., LLC*, No. 3:14-cv-315, 2014 WL 6900916, at *3 (E.D. Va. Dec. 5, 2014) (transferring case to District of Alaska).

subject to personal jurisdiction in Virginia." *Carroll v. Vinnell Arabia, LLC*, No. 1:15-cv-815, 2015 WL 5579917, at *4 (E.D. Va. Sept. 22, 2015) (citation omitted). *See also Price v. Waste Mgmt., Inc.*, No. ELH-13-02535, 2014 WL 1764722, at *11 (D. Md. Apr. 30, 2014) ("conclusory non-fact-specific jurisdictional allegations are insufficient to establish a prima facie case of jurisdiction") (citation and internal quotation marks omitted).

Because Virginia's long-arm statute "extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal citations and quotation marks omitted). "A Virginia court . . . has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 651 (W.D. Va. 2019) (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012)). To show that the exercise of jurisdiction is consistent with due process, Mr. Garrison must establish that ADL has sufficient "minimum contacts" with Virginia "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the Due Process Clause, a court can exercise personal jurisdiction based on either "general or all-purpose jurisdiction" or "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Neither theory permits jurisdiction over ADL here.

### A.     This Court Lacks General Jurisdiction Over ADL

There is no basis for general jurisdiction in this Court over ADL, a D.C. nonprofit with its principal place of business in New York. Compl. ¶ 9. The Supreme Court recently reaffirmed that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For corporate entities, the

"paradigm forum for the exercise of general jurisdiction" is one "equivalent" to an individual's "domicile," in which the corporation can be "fairly regarded as at home." *Goodyear*, 564 U.S. at 924 (citation omitted). In nearly all cases, that means either the "place of incorporation" or the "principal place of business." *Daimler*, 571 U.S. at 137; *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 133 (4th Cir. 2020) ("The [Supreme] Court [has] held that a corporation may be fairly regarded as at home in the forum where it is incorporated and the forum where it has its principal place of business.") (citing *Daimler*, 571 U.S. at 137). Because ADL is neither incorporated nor headquartered in Virginia, it is not "at home" in this forum and cannot be subject to general jurisdiction here.

Nor can Mr. Garrison rely on the fact that ADL operates a website to obtain general jurisdiction. "[T]he mere existence of an interactive website . . . is not sufficient for a court to exercise general jurisdiction." *Coastal Video Commc'ns Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 571–72 (E.D. Va. 1999); *see also Thousand Oaks Barrel Co. v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 714 n.3, 715 (E.D. Va. 2017) (defendant that operates "an interactive e-commerce website which allows customers to select products, order them, and have them shipped to the customer" "lacks the kind of extensive, systematic contacts with Virginia that are necessary for general jurisdiction"). Because the Complaint contains no factual allegations whatsoever that could possibly suggest ADL is "at home" in Virginia, this Court lacks general jurisdiction over ADL.

**B.      This Court Lacks Specific Jurisdiction Over ADL**

Mr. Garrison's bid for specific jurisdiction fares no better. To establish specific jurisdiction, a plaintiff must show that "the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal citations

omitted); *see also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) ("A court may exercise specific jurisdiction 'when the cause of action arises out of the defendant's contacts with the forum.'") (quoting *Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 213 (4th Cir. 2002) (internal brackets omitted)).  The Fourth Circuit has held that specific jurisdiction is proper only where "(1) [] the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) [] the plaintiffs' claims arise out of those activities directed at the State; and (3) [] the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002); *see Consulting Eng'rs v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009) (all elements are required).

None of these elements exist here.  There is simply no nexus to Virginia in any of the facts alleged in the Complaint giving rise to Plaintiff's causes of action.  The parties are residents of D.C., New York, and Montana; the statements at issue were published online and have no relationship to Virginia; and Mr. Garrison's alleged harm centers around being disinvited from an event at the White House.  The only link to this forum appears to be that Plaintiff's counsel has an office in Charlottesville.

A claim "arises out of" a defendant's contacts with the forum state when those contacts "form the basis of the suit," *Consulting Eng'rs*, 561 F.3d at 278–79, or when the defendant's in-state activities were "the genesis of th[e] dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) (rejecting claim that "the strength of

the requisite connection between the forum and the specific claims at issue [could be] relaxed if the defendant has extensive forum contacts that are unrelated to those claims").

It is well settled that the fact that the statements at issue were published online, and therefore accessible by Virginia citizens just like anyone else in the world, is insufficient to establish specific jurisdiction in this forum.  "[A] person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."  *ALS Scan,* 293 F.3d at 714; *see also Knight v. Doe*, No. 1:10-cv-887, 2011 WL 2471543, at *2 (E.D. Va. June 21, 2011) ("The mere act of placing information on the internet is insufficient to subject a person to personal jurisdiction in every State in which the information is accessed.").  Rather, the defendant must "direct electronic activity into [the forum state] with the manifest intent of engaging in business or other interactions within that state *in particular*."  *Carefirst*, 334 F.3d at 401 (emphasis added).  Jurisdiction over an out-of-state publisher of allegedly defamatory content on a website accessible in the forum state is proper **only** when the defendant, through its publications, "manifest[s] an intent to target and focus on [forum-state] *readers*."  *Young*, 315 F.3d at 263 (emphasis added).  None of the ADL publications at issue demonstrates any such intent to target Virginia readers – and Mr. Garrison does not even attempt to identify such a link.

The Fourth Circuit's decision in *Young* is dispositive of the jurisdictional issue here.  In *Young*, a Virginia prison warden sued the publishers of two Connecticut newspapers for libel over articles published online about conditions in Virginia prisons where Connecticut prisoners were transferred.  Those facts had far more of a relationship to Virginia than anything alleged here.  Nonetheless, the court held that the publishers were not subject to jurisdiction in Virginia:

> [T]he fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their

12

> website content to a Virginia audience.  Something more than posting and accessibility is needed to indicate that the newspapers purposefully (albeit electronically) directed their activity in a substantial way to the forum state.

*Id.* at 263 (citation, internal quotation marks and alterations omitted).  The Court examined the "general thrust and content" of the articles and newspapers as a whole, concluding that neither showed a "manifest [] intent to target and focus on Virginia readers."  *Id.*

Following *Young*, courts in Virginia consistently have held that where a libel defendant's online publications "were not expressly directed at [the forum state], but to an undefined audience of Internet users around the world," the defendant is not subject to personal jurisdiction – even if the plaintiff is a resident of the forum, and even if the articles at issue explicitly mention the forum state, neither of which is true here.  *See, e.g.*, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 494 (W.D. Va. 2019) (no jurisdiction over defendants who posted allegedly defamatory comments on social media about Virginia Tech professor because no facts suggested authors "took affirmative steps" to "target or focus on Virginia readers"); *McNeil v. Biaggi Prods., LLC*, No. 3:15-cv-751, 2017 WL 2625069, at *8 (E.D. Va. June 16, 2017) (dismissing claims where defendants accused Virginia resident of various crimes "and even referenced Virginia," but nothing indicated they "specifically directed the posts at Virginia or to Virginia social media users"); *FireClean, LLC v. Tuohy*, No. 1:16-cv-0294, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016) (granting motion to dismiss defamation claim by Virginia company where websites aimed to distribute opinions "to the nationwide marketplace of consumers").

Here, there is not even the minimal connection to Virginia that the Fourth Circuit found insufficient in *Young*.  Mr. Garrison is a not a Virginia resident, and none of the allegedly defamatory statements mention Virginia or even refer to events that purportedly occurred in Virginia.  As in *Young*, the "general thrust and content" of the statements and the ADL's website

13

as a whole are "not designed to attract or serve a Virginia audience."  Accordingly, this Court lacks specific jurisdiction over ADL.

### C.     The Exercise of Jurisdiction Would Also Be Constitutionally Unreasonable

Finally, even if Mr. Garrison could show some nexus to Virginia (which he does not and cannot do), the Supreme Court has made clear that "minimum requirements inherent in the concept of 'fair play and substantial justice'" may defeat "the reasonableness of jurisdiction." *Burger King*, 471 U.S. at 477–78.   That is consistent with the third prong of the Fourth Circuit's specific jurisdiction test, which evaluates "whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"   *ALS Scan*, 293 F.3d at 712.   To determine constitutional reasonableness, courts examine several factors, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279 (quoting *Burger King*, 471 U.S. at 477).

None of these factors support the exercise of jurisdiction over ADL.  Virginia has little interest in adjudicating this dispute, which has nothing to do with anyone or anything in the Commonwealth.  Neither ADL nor Mr. Garrison are domiciled here, and Mr. Garrison therefore cannot claim any "convenience" from litigating on this forum.  The lack of any nexus to Virginia indicates that asserting personal jurisdiction over the ADL would not be constitutionally reasonable.  *See Foster Made, LLC v. Foster*, No. 3:17-cv-775, 2018 WL 4693810, at *8 (E.D. Va. Sept. 28, 2018) ("In the context of this cause of action based entirely on Internet activity, Plaintiff fails to establish a prima facie case for specific personal jurisdiction over Defendant. This means that, were the Court to require Defendant to defend his interests in Virginia, the requirement

14

would 'offend traditional notions of fair play and substantial justice.'") (quoting *Int'l Shoe*, 326 U.S. at 316).

## II.     VENUE IS IMPROPER IN THIS DISTRICT UNDER FED. R. CIV. P. 12(B)(3)

Dismissal of this action is also warranted under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) because venue is improper in this District.  When a defendant moves to dismiss for improper venue under Rule 12(b)(3), "the plaintiff bears the burden of establishing that venue is proper."  *Adhikari v. KBR, Inc.,* No. 1:15-cv-1248, 2016 WL 4162012, at \*3 (E.D. Va. Aug. 4, 2016) (citation omitted).  Plaintiff alleges that venue is proper in this District under 28 U.S.C. § 1391(b)(1), which allows a claim to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  Compl. ¶ 12. But as the Complaint concedes, ADL is a citizen only of New York and the District of Columbia – not Virginia.  Compl. ¶ 9.  Moreover, as a defendant entity, ADL is deemed to "reside" for venue purposes in any district where it is subject to personal jurisdiction.  28 U.S.C. § 1391(c).  As set forth in Section I above, ADL is not subject to jurisdiction in Virginia; therefore, it is not "resident" in this District for venue purposes.  *See Curry v. Trans Union, LLC*, No. 3:16-cv-824, 2017 WL 2058266, at \*8 (E.D. Va. Apr. 26, 2017) (where defendant entity was not subject to personal jurisdiction in Virginia, it did not "reside" in Virginia for venue purposes and therefore the Virginia federal court was not a proper venue under Section 1391(b)(1)), *R. & R. adopted*, No. 3:16-cv-824, 2017 WL 2056176 (E.D. Va. May 12, 2017).  Accordingly, Section 1391(b)(1) plainly does not support venue in this District.

Nor could venue be justified in this District under any other basis in Section 1391. Subsection 1391(b)(2) does not apply because there is not a single allegation of events in Virginia giving rise to this claim, much less a "substantial part" of any such events.  This claim arises out of publications on the internet, which are equally accessible in this District as anywhere else in the

country (or the world).  Subsection 1391(b)(3) does not apply both because there *are* other judicial districts where venue would be proper – namely, the District of the District of Columbia and the Southern District of New York, where ADL "resides" for purposes of Section 1391(b)(1) – and because ADL is not subject to this Court's jurisdiction, as set forth above.  *Curry*, 2017 WL 2058266, at *9 (Section 1391(b)(3)'s "fallback" provision does not apply when there is another district where venue would be proper).

Because venue is improper, ADL requests that this Court dismiss the case pursuant to Fed. R. Civ. P 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, transfer the case to the District Court for the District of Columbia (or the Southern District of New York) pursuant to 28 U.S.C. § 1406(a).  *See, e.g.*, *Curry*, 2017 WL 2058266, at *10 (holding that court lacked personal jurisdiction and Virginia was an improper venue, and transferring case to the Western District of Washington); *Corsi v. Stone*, No. 19-cv-324, 2020 WL 999053, at *3 (D.D.C. Mar. 1, 2020) (dismissing case for improper venue where statements were published outside the district and plaintiff lived outside the district); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. CV 116-071, 2017 WL 2126323, at *1 (S.D. Ga. May 16, 2017) (finding venue improper and ordering transfer of defamation case to the Northern District of California, where the challenged statements were issued).

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF PURSUANT TO FED. R. CIV. P. 12(B)(6)

Under Rule 12(b)(6), a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alterations omitted).  Although a court must take "well-pleaded factual allegations" as true for

16

purposes of a Rule 12(b)(6) motion, allegations that are simply legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Where, as here, a plaintiff has not "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.

### A.   Plaintiff Fails to State A Claim for Defamation

#### 1.   The 2019 ADL News Item's Criticism of the Rothschilds Cartoon Fails to Support a Defamation Claim

##### a.   Characterizing the Rothschilds Cartoon as "Anti-Semitic" Is Constitutionally Protected Opinion

Nearly all of the statements at issue consist of ADL stating that Mr. Garrison drew "an anti-Semitic cartoon." To the extent the Complaint purports to sue file suit over the original 2017 ADL Article and related tweets going several years back, that claim is clearly time-barred by the one-year statute of limitations. *See* Va. Code § 8.01-247; *Al Shimari v. CACI Int'l, Inc.*, 933 F. Supp. 2d 793, 801 (E.D. Va. 2013) (Virginia's choice of law rules apply Virginia's statutes of limitations to tort claims filed here); *Loven v. Romanowski*, No. 2:04-cv-00108, 2005 WL 2931996, at *3 (W.D. Va. Nov. 4, 2005) (Virginia's one-year statute of limitations applies to all defamation claims filed in Virginia courts). The only timely claim concerns the 2019 ADL News Item, which reported about Mr. Garrison's invitation to the White House's Social Media Summit being rescinded. Curran Decl. Ex. 3. The News Item's characterization of the Rothschilds Cartoon in the news item as "anti-Semitic" is not actionable as a matter of law, because it is a classic expression of nonactionable opinion.

It is axiomatic that under the First Amendment, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 20 (1990). Whether a statement constitutes protected opinion is a question of law for the Court. *CACI Premier Tech.,*

*Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008).  The first, and potentially dispositive question is whether the challenged statement is verifiable – in other words, whether it is objectively capable of being proved true or false.  If it is not verifiable, then it is constitutionally protected.  *Biospherics v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998).

This doctrine applies with special force where, as here, the publisher outlines the basis for its opinion.  When "the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related."  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993).  "The rationale behind this rule is straightforward: When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts."  *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).  *See also Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144–45 (D.C. Cir.) ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation."), *modified*, 22 F.3d 310 (D.C. Cir. 1994).  Moreover, "[e]ven when a statement is subject to verification, the statement will remain protected if it is 'clear to all reasonable listeners that [the statement is] offered . . . as exaggerated rhetoric intended to spark the debate' or 'the opinion of the author drawn from the circumstances related.'"  *Eramo v. Rolling Stone LLC*, 209 F. Supp. 3d 862, 875 (W.D.Va. 2016) (quoting *CACI*, 536 F.3d at 301).

Applying these principles, courts have routinely held that criticizing the words or actions of others as anti-Semitic, racist, sexist, or otherwise bigoted is not actionable.  In *Yagman*, for example, a lawyer told a reporter that a judge had a "penchant for sanctioning Jewish lawyers" –

naming three specific Jewish lawyers that the judge had sanctioned – and that he found this to be "evidence of anti-semitism" by the judge.  The court explained that the only portions of the statement that could be considered verifiable fact were that the judge had sanctioned these three individuals, and that each was Jewish – but none of these facts was allegedly false.  "The remaining portion of Yagman's . . . statement is best characterized as opinion; it conveys Yagman's personal belief that Judge Keller is anti-Semitic."  55 F.3d at 1438.  Similarly, in *Doe #1 v. Syracuse University*, the court held that a university official's description of videos taken during a fraternity event as "racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities" was nonactionable opinion.  468 F. Supp. 3d 489, 512 (N.D.N.Y. 2020).  *See also, e.g.*, *Russell v. Davies*, 97 A.D.3d 649, 650 (N.Y. App. Div. 2012) (news stories that labeled an essay written by the plaintiff as "racist" and "anti-Semitic" were nonactionable opinions); *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (N.Y. App. Div. 2015) (statements that plaintiff had authored "racist writings" and had "ties to a white supremacist group" were nonactionable because the defendant fully disclosed the facts supporting the opinions); *Jones v. City of Phila.*, 893 A.2d 837, 845 (Pa. Comm. Ct. 2006) (criticism of plaintiff's statement as a "slur" against Jews and "anti-Semitic" was protected opinion).  Following this well-established body of precedent, courts have protected organizations that, like ADL, focus on identifying and calling out hate and extremism from liability when they carry out that mission.  *See, e.g.*, *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1267 (M.D. Ala. 2019) (Southern Poverty Law Center's designation of plaintiff as a "hate group" was protected opinion), *appeal docketed*, No. 19-14125 (11th Cir. Oct. 18, 2019); *Ctr. for Immigration Studies v. Cohen*, No. CV 19-0087, 2019 WL 4394838, at *4

(D.D.C. Sept. 13, 2019) (same), *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020), *cert. denied*, No. 19-1324, 2020 WL 5882275 (U.S. Oct. 5, 2020).

The same reasoning applies here.  ADL criticized a *cartoon*, and whether the Rothschilds Cartoon is anti-Semitic is not an objectively verifiable fact.  Regardless of what Garrison may claim his intentions were, it could never be verifiably *false* for persons to regard as anti-Semitic a cartoon that depicts two non-Jewish American political and military leaders as the puppets of a prominent European Jewish financier and the Rothschild family of Jewish bankers.[6]

Moreover, the 2019 ADL News Item (as well as the 2017 ADL Article) clearly sets forth the basis for ADL's characterization of the cartoon as anti-Semitic.  The ADL News Item linked to the 2017 ADL Article, which explained that Soros and the Rothschilds are Jewish and often the target of anti-Semitic conspiracy theories, noted that Cernovich himself had cropped the Rothschilds out of the cartoon after it was criticized as anti-Semitic, and reported that the cartoon had become popular on neo-Nazi social media sites.  Curran Decl Ex. 2.  The 2019 News Item also linked to another ADL article explaining how Jewish financiers in general, and the Rothschilds in particular, have long been the subject of anti-Semitic tropes portraying them as secretly manipulating world governments.  Curran Decl Ex. 5.  And it even linked to a recent Jewish

---

[6] Even though ADL's statements at issue here all describe Mr. Garrison's *cartoon* as anti-Semitic – not Mr. Garrison himself – Mr. Garrison also could not prevail on a claim that he was portrayed personally as "anti-Semitic," as courts have repeatedly dismissed that descriptor (and similar ones like "racist") as nonactionable opinion. *See, e.g., Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) (accusation that plaintiff was "racist and anti-Semitic" was not actionable); *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (accusation that plaintiffs "hate[d] . . . Jews" nonactionable); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 807 (W.D. Pa. 1972) ("We hold that to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel."); *Buckley v. Littell*, 539 F.2d 882, 893-95 (2d Cir. 1976) (description of plaintiff as a "fellow traveler" of "fascist[s]" and the "radical right" could not "be regarded as having been proved to be statements of fact"); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) (allegation that plaintiff was a "racist" was not actionable); *Condit v. Clermont Cty. Review*, 675 N.E.2d 475, 478 (Ohio Ct. App. 1996) ("Numerous courts have concluded that allegations of fascism, anti-Semitism, or other accusations of ethnic bigotry are not actionable as defamation.") (collecting cases).  Whether or not Mr. Garrison holds anti-Semitic views in his heart is simply not a fact capable of being proven true or false. *See Haynes v. Alfred Kopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("anyone is entitled to speculate on a person's motives from the known facts of his behavior").

Telegraphic Agency article that primarily focused on Garrison's statements defending the cartoon. Curran Dec. Ex. 4.  Any reader of the 2019 ADL News Item would be free to disagree with ADL's characterization of the cartoon, but their disagreement with ADL would not be objectively verifiable either.

The only verifiable facts are that Mr. Garrison drew the cartoon and Soros and the Rothschilds are Jewish, which is never disputed.  Otherwise, ADL's critique of the cartoon as "anti-Semitic" in an article that includes the cartoon and analyzes its imagery is a classic statement of protected opinion.  Indeed, "[i]t is a prized American privilege to speak one's mind . . . on all public [issues], and this opportunity is to be afforded for vigorous advocacy." *CACI Premier Tech.*, 536 F.3d at 304 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964)).  In sum, the First Amendment protects Mr. Garrison's right to create his cartoons, but it also protects ADL's right to criticize them.  His defamation claims against ADL for calling the Rothschilds' Cartoon "anti-Semitic" should therefore be dismissed with prejudice.

b.      The Complaint Does Not Plausibly Allege ADL Criticized the <u>Cartoon With Actual Malice</u>

Even if ADL's criticism of the Rothschilds Cartoon as "anti-Semitic" could somehow be considered a statement of fact, Plaintiff's defamation claim still fails as a matter of law.  Mr. Garrison is a public figure, and the Complaint fails to plausibly plead that ADL published its criticism with actual malice – i.e., that ADL knew or did not believe the cartoon was anti-Semitic.

(1)      <u>Mr. Garrison is a Limited-Purpose Public Figure</u>

There can be no serious no question that Mr. Garrison is a limited-purpose public figure for purposes of this lawsuit over criticism of his cartoons.  The Fourth Circuit has articulated a five-factor test to identify a limited-purpose public figure, asking whether: "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of

21

special prominence in a public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statements; and (5) the plaintiff retained public figure status at the time of the alleged defamation." *Fitzgerald v. Penthouse Int'l, Ltd.,* 691 F.2d 666, 668 (4th Cir. 1982).  The second and third factors are the "heart" of the test.  *Carr v. Forbes, Inc.*, 259 F.3d 273, 280 (4th Cir. 2001).

Mr. Garrison easily satisfies all of these factors.  His website states that his cartoons "generate[] millions of monthly impressions on social media."[7]  *See also* Compl. ¶ 8 (Garrison's cartoons have an audience of "millions of people around the world").  He has been profiled by and given interviews to media sources such as *WIRED* and the Jewish Telegraphic Agency.  Those interviews focus on his  experiences with his cartoons being caricatured by anti-Semites.[8]  In 2015, he published a book, *Rogue Cartoonist*, which is still available for purchase on Amazon.com. Compl. ¶ 24(a).  In that book, he says he has not anti-Semitic and details the caricaturing of his cartoons by anti-Semitic trolls.  He has a Wikipedia page and a "blue check" verified Twitter account.  Compl. ¶¶ 4, 5.  His work was prominent enough to garner an invitation from the President of the United States to the White House's Social Media Summit.  *Id.* ¶ 5.

Next, Mr. Garrison voluntarily thrust himself into multiple public controversies prior to the publication of the allegedly defamatory statements.  The very essence of Mr. Garrison's work is to provoke controversy: his website states that he "draws thought provoking, politically incorrect cartoons" that is "high impact political art to expose the corruption of the Deep State and their enablers, the Fake News Media."[9]  Journalists and commentators are routinely considered limited-purpose public figures for purposes of critiquing what they publish.  *See, e.g., Faltas v. State*

---

[7] Curran Decl. Ex. 1.
[8] https://www.wired.com/story/ben-garrison-alt-right-cartoonist/; Curran Decl. Ex. 6.
[9] Curran Decl. Ex. 1.

22

*Newspaper*, 928 F. Supp. 637 (D.S.C. 1996) (author of newspaper op-ed about homosexuality was limited-purpose public figure for purposes of claims that she was defamed by letters to the editor criticizing her article), *aff'd*, 155 F.3d 557 (4th Cir. 1998); *Falls v. Sporting News Publ'g Co.*, 714 F. Supp. 843, 847 (E.D. Mich. 1989) (sports columnist was a public figure "with regard to his sports writing activities"), *aff'd*, 899 F.2d 1221 (6th Cir. 1990) (per curiam); *Adler v. Condé Nast Publ'ns, Inc.*, 643 F. Supp. 1558, 1564 (S.D.N.Y. 1986) ("We find that Adler's general fame or notoriety in the literary and journalistic community and pervasive involvement in the affairs of society render her a public figure with regard to her activities relating to literature, journalism and criticism."); *O'Donnell v. CBS, Inc.*, 782 F.2d 1414, 1417 (7th Cir. 1986) (vice president and general manager of radio station who used editorial position to advocate a particular point of view regarding an EPA controversy became a limited purpose public figure with respect to that controversy); *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 137 (2d Cir.1984) (author of nine "controversial" novels was limited purpose public figure with respect to statements about her involvement in writing books and plays); *Maule v. NYM Corp.*, 54 N.Y.2d 880, 881–82 (1981) (magazine writer and book author was a public figure in defamation suit over statement criticizing him as "possibly the worst writer on the magazine").

Moreover, there has long been controversy over whether conservative or libertarian activists promote Semitism, and Mr. Garrison has given interviews, issued public statements, and written a book denying that he holds anti-Semitic views.  He published the Rothschilds Cartoon as part of his commitment to creating provocative, high impact political art, and so by drawing the cartoon he invited the very debate about its intended message that he now sues over.  *See, e.g.*, *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 274 (S.D.N.Y. 2013) (plaintiff "has willfully interjected [himself] into a public controversy by way of creating the very subject of the controversy")

(citation omitted), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015). In sum, Mr. Garrison "entered a political arena in which heated discourse was to be expected and must be expected, and therefore [he] must accept the banging and jostling of political debate, in ways that a private person need not." *Edwards*, 378 F. Supp. 3d at 514 (internal quotation marks omitted).

(2) <u>The Complaint Fails to Plausibly Plead Actual Malice</u>

As a public figure, Mr. Garrison must plead *facts* sufficient to establish that ADL made each statement at issue "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 279–80. By design, this is a "significant burden" for a public-figure plaintiff to overcome. *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993). *See also McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996) ("The standard of actual malice is a daunting one."). It focuses solely on the defendant's *actual* state of mind "at the time of publication." *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984). "Mere negligence does not suffice." *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 510 (1991). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added).

"[A]fter *Iqbal* and *Twombly,* every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (affirming dismissal of public-figure defamation claim for failure to plausibly plead actual malice). *See also Nelson Auto Ctr., Inc. v. Multimedia Holdings Co.*, 951 F.3d 952 (8th Cir. 2020); *Biro v. Condé Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir.

24

2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012). "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Accordingly, on a motion to dismiss, "[c]ourts are [only] required to 'draw all *reasonable* inferences in the plaintiff's favor.' The obvious inverse of that rule is that courts need not draw *unreasonable* inferences in the plaintiff's favor." *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 354 n.6 (S.D.N.Y. 2017) (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) (emphasis added).

Thus, to survive a motion to dismiss Mr. Garrison must plead facts that could plausibly establish that ADL knew or believed that a cartoon depicting two political and military leaders who are not Jewish as puppets secretly controlled by Soros and the Rothschilds was not anti-Semitic. To even assert that proposition is to demonstrate its absurdity, and the Complaint's principal allegations of actual malice only further underscore that. Mr. Garrison alleges (1) that the Rothschilds controlled Soros and that Soros controlled McMaster, and (2) that ADL knew that. Compl. ¶ 14. Neither allegation merits the benefit of the doubt under *Iqbal* and *Twombly*. *See, e.g.*, *McNaughton v. De Blasio*, 644 F. App'x 32, 33 (2d Cir. 2016) (plaintiff's "allegations of a conspiracy spanning several years . . . [were] implausible and conclusory" and therefore failed to "satisfy the pleading standards of *Twombly*"); *Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87, 89 (2d Cir. 2018) (affirming dismissal of defamation claim where plaintiff's allegations in support of actual malice were "patently unbelievable" and "illogical").

Mr. Garrison's other allegations fare no better. He claims that ADL knew he was not anti-Semitic because a 2015 Vice article pointed out that he was not a member of the KKK and because

ADL allegedly reviewed his 2015 book in which he "clearly explained the fact that he was neither racist nor anti-Semitic."  Compl. ¶ 14.  But that very point was addressed in the 2017 ADL Article: "Ironically, Garrison has frequently complained that some of his cartoons were being manipulated by others, with anti-Semitic themes added to them.  In this instance, however, he displayed a clearly anti-Semitic cartoon on his own website."  Curran Decl. Ex. 2.  The fact that ADL explicitly told readers about the very prior history Plaintiff points to negates any claim of actual malice. *Michel*, 816 F.3d at 686.  Moreover, it is well established that the fact that a plaintiff has previously denied something is not evidence of knowledge of falsity by the publisher.  *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003) ("[p]ublishers need not accept denials, however vehement") (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989); *Worrell-Payne v. Gannett Co.*, 49 F. App'x 105, 108, 2002 WL 31246121, at *2 (9th Cir. 2002) (defendants' knowledge that plaintiff made "statements [] in her own defense at a press conference" and distributed packet of "corrective information" did not support finding of actual malice).  Nor do Mr. Garrison's claims of bias, ill will, a "preconceived narrative," or a "desire to . . . undermine the President" satisfy *Iqbal/Twombly*. *See* Compl. ¶ 24.  "[T]he motivations behind defendants' communications – inspired by political differences or otherwise – do not impact whether defendants acted with actual malice as a matter of law."  *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) (dismissing defamation claim for failure to plausibly plead actual malice). *See also Mayfield*, 674 F.3d at 378 (affirming grant of motion to dismiss defamation claim because "allegations that the [defendants] intended to harm [plaintiff] . . . simply do not suggest that Appellees knew their statements were false or that they were reckless with respect to their veracity"); *Potter v. Associated Press*, No. 3:15-cv38, 2015 WL 4393401, at *9 (E.D. Va. 2015)

(allegations regarding defendant's "motivation to make defamatory statements" did not plausibly plead actual malice).

c.     None of the Other Asserted Statements Challenged by<br>Mr. Garrison Support a Claim for Defamation Claim<br><u>for Independent Reasons</u>

In addition to the 2019 ADL News Item and 2017 ADL Article, the Complaint notes more than a dozen additional publications, almost all of which just re-state ADL's critique of the Rothschilds' Cartoon as "anti-Semitic."  Most are tweets allegedly by ADL "operatives," while a few are tweets or internet postings by third parties.  None are actionable, for multiple reasons.

(1)    <u>Tweets Allegedly by ADL About the Rothschilds' Cartoon</u>

Seven of the additional publications are simply tweets allegedly by ADL that link to the 2017 ADL Article.  They include:

- https://twitter.com/ADL/status/893191101649215488 (Compl. ¶ 3)

- https://twitter.com/egavactip/status/893197548965507072  (Compl. ¶ 13)

- https://twitter.com/orensegal/status/893247363590098944 (Compl. ¶ 13)

- https://twitter.com/egavactip/status/906212115295428609 (Compl. ¶ 13)

- https://twitter.com/egavactip/status/948684431937691648 (Compl. ¶ 13)

- https://twitter.com/ADL/status/1150466237782269954 (Compl. ¶ 16)

- https://twitter.com/egavactip/status/1203345635627417600 (Compl. ¶ 16)

Those tweets are attached as Exhibits 6-12 to the Curran Declaration.  None of them are actionable for the same reasons the 2017 ADL Article they link to is not actionable: the tweets express protected opinion and there is no plausible allegation they were tweeted with actual malice.  In addition, the five tweets listed in paragraphs 3 and 13 of the Complaint (Curran Decl. Exs. 6-10)

27

are also time-barred because they were published between August 3, 2017 and January 3, 2018, well outside the one-year statute of limitations.

(2)    Statements By Third Parties Referencing the
2017 ADL Article

The Complaint also references six statements by third parties that link or refer to the ADL's criticism of the Rothschilds' Cartoon.  They are:

- Garrison's Wikipedia Page (Compl. ¶ 4)

- A Washington Examiner article titled "Artist accused of 'blatant anti-Semitism' disinvited from White House" (Compl. ¶ 16)

- A tweet by journalist Sam Thielman (Compl. ¶ 16)

- A tweet by Twitter user "MFilmFest" (Compl. ¶ 16)

- A tweet by Twitter user "KingSkyLord" (Compl. ¶ 16)

- A Facebook statement by the American Jewish Congress (Compl. ¶ 16)

These items are attached as Exhibits 13-16 to the Curran Declaration.[10]  None support a defamation claim, for either of two reasons.  *First*, once again none are actionable because the underlying ADL statements about the Rothschilds Cartoon they refer to are not actionable, for the reasons discussed above.  *Second*, even if that were not so, Mr. Garrison cannot state a defamation claim against ADL for online articles and tweets by third parties that referenced its 2017 article.  Judge Brinkema in the Eastern District recently analyzed this issue extensively, and held that publishers of internet material are not liable for third-party tweets and other references to their earlier article.  *See Lokhova v. Halper*, 441 F. Supp. 3d 238, 256-59 (E.D. Va. 2020), appeals filed, No. 20-1368 (4th Cir. Mar. 30, 2020) and No. 20-1437 (4th Cir. Apr. 15, 2020).  The same analysis applies here.

---

[10] The tweet from "MFilmFest" is not attached as an exhibit because it does not appear to exist at the URL provided in the Complaint.  The Facebook statement from the American Jewish Congress is pasted in Paragraph 16 of the Complaint.

28

(3)   Additional ADL Blog Posts

Finally, the Complaint mentions two additional blog articles posted by ADL, which likewise fail to support a claim for defamation.

The first is titled "Far Right Trolls Recast 'No Means No' and 'My Body My Choice' as Anti-Immigrant Memes."  Compl. ¶ 17; Curran Decl. Ex. 17.  This post is not actionable for either of two reasons.  *First*, it is time-barred because it was published on January 30, 2018.  *Second*, there is nothing in that post that is defamatory of Mr. Garrison.  He is only mentioned once, as one of several "prominent far right figures" who promoted a political message criticizing immigration in the form of a meme titled "My Borders My Choice."  While promoting that message may have been controversial, it is not defamatory.

Under Virginia law, a court "must decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact."  *Virginia Citizens Def. League v. Couric*, 910 F.3d 780, 784 (4th Cir. 2018) (citation and internal quotation marks omitted).  The Virginia Supreme Court has emphasized that a court has an "essential, gatekeeping function" that protects the interests of free speech by ensuring "that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages."  *Webb v. Virginian-Pilot Media Cos.*, 287 Va. 84, 90 (2014); *see also Jackson v. Liberty Univ.*, 2017 WL 3326972, at *10 (W.D. Va. Aug. 3, 2017) ("The Court, in its [] 'gatekeeping' role, must first determine 'whether, as a matter of law, the article is reasonably capable of the defamatory meaning [ ] ascribe[d] to it.'") (quoting *Virginian-Pilot*, 287 Va. at 89).  Importantly, words that are "[m]erely offensive or unpleasant . . . are not defamatory."  *Chapin*, 993 F.2d at 1092; *see also Schaecher v. Bouffault*,

290 Va. 83, 92 (2015) ("language that is insulting, offensive, or otherwise inappropriate" does not equate to being defamatory).[11]

It is not clear whether Mr. Garrison even denies that he promoted a political message using the meme "My Borders My Choice," but in any event that is simply not defamatory. And if Plaintiff may be complaining about the post's characterization of that message as "xenophobic" (Compl. ¶ 17), such criticism is nonactionable opinion for much the same reasons as ADL's criticism of the Rothschilds Cartoon. *See, e.g.*, *Ganske v. Mensch*, --- F. Supp. 3d ---, 2020 WL 4890423, at *5 (S.D.N.Y. Aug. 8, 2020) ("A reasonable reader would likely view Defendant's reference to Plaintiff's tweet as 'xenophobic' to be her opinion and not conveying any objective facts about Plaintiff.").

The second post is the Explainer, titled "Jewish 'Control' of the Federal Reserve: A Classic Antisemitic Myth." Compl. ¶ 17; Curran Decl. Ex. 5. The post includes one of Garrison's cartoons that was in fact doctored by someone else to convey an anti-Semitic message. But the post says nothing defamatory about Mr. Garrison. In order to try to posit a defamatory meaning, the Complaint quotes just a fragment of the first sentence of the caption below the image: "[w]hite supremacists and other extremists frequently spread anti-Semitic memes, such as the image above." Compl. ¶ 17. But "[a] court should not isolate particular words or sentences and determine whether, considered alone, they are defamatory"; instead, "they must be considered in their context." *Tavoulareas v. Piro*, 817 F.2d 762, 818 (D.C. Cir. 1987). *See also Chapin*, 993 F.2d at 1098 (4th Cir. 1993) (allegedly defamatory statement must be read in context where it appears).

---

[11] On the issue of defamatory meaning, there is no need to engage in a choice of law analysis because there is no conflict between Virginia law and the laws of D.C. or New York. *See, e.g.*, *Rosen v. Am. Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012) (publication is defamatory if it "tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community," but it "must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous'") (citations omitted); *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (a statement is defamatory under New York law if it "*tends* to disparage a person in the way of his office, profession or trade").

Read in full, the caption where this phrase appears states:

> White supremacists and other extremists frequently spread antisemitic memes, such as the image above, **which is a doctored version of a cartoon that originally had no antisemitic intent.  This doctored image has appeared on numerous conspiratorial web sites.**

Curran Decl. Ex. 5.  Thus, the full caption states that this image is a "doctored" cartoon shared by white supremacists, and further states that the original cartoon (signed by Mr. Garrison) had "no antisemitic intent."  It is not defamatory of Mr. Garrison to state that third parties altered and shared his cartoon, or that the doctored cartoon was shared by white supremacists.  *See, e.g.*, *Lokhova*, 441 F. Supp. 3d at 262.[12]

## B.   Garrison's Remaining Claims (Counts II-IV) Fail as Well

All of Mr. Garrison's remaining claims – for conversion (Count II), trespass to chattels (Count III), and a permanent injunction (Count IV) – similarly fail as a matter of law.  "To establish a claim for conversion, the plaintiff must prove: 'the ownership or right to possession of the property at the time of the conversion and . . . the defendant's conversion by the wrongful exercise of dominion or control over the plaintiff's property, depriving plaintiff of possession.'"  *Acken v. Kroger Co.*, 58 F. Supp. 3d 620, 633 (W.D. Va. 2014) (quoting *Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 518 (E.D. Va. 2001)).   In Virginia, "[a] trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization."  *America Online v. LCGM, Inc.*, 46 F. Supp. 2d 444, 451-52 (E.D. Va. 1998).

---

[12] Remarkably, the Complaint further alleges that ADL itself "doctored" this cartoon, and even more implausibly alleges that the caption is ADL's admission that it did that. Compl. ¶ 15.  Apart from the patent implausibility of that claim, Plaintiff has for many years spoken and written publicly about how this doctored version of his cartoon, dating to 2009, was altered by trolls on the website 4chan, including a particular individual based in Florida.  *See* https://knowyourmeme.com/editorials/interviews/qa-with-ben-garrison.  It is highly doubtful this allegation satisfies the standards of Rule 11 (nor the allegation that ADL knows the Rothschilds control Soros who controls McMaster and Petraeus), and ADL reserves all rights with respect to any remedies it may have.  In any event, it makes no difference for purposes of this motion.  If the caption could somehow be construed as an admission that ADL doctored the cartoon, that would be an example of ADL defaming itself – not Mr. Garrison.

The Complaint fails to allege facts to plausibly allege either claim. Instead, Mr. Garrison simply restates the legal standard for each claim. *See* Compl. ¶¶ 26-35. "This kind of conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378. Accordingly, these claims can and should be dismissed for failure to satisfy the *Iqbal/Twombly* standard.

In any event, any conversion or trespass to chattel claim based on reproducing, altering, or commenting on a copy of plaintiff's artwork must be dismissed for either of two reasons. First, making a copy of artwork does not give rise to claims for conversion or trespass to chattels. Absent interference with physical property, intangible rights may only be the subject of such claims where they are merged with a document; for example, where obtaining a stock certificate deprive the rightful owner of possession of the stock. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 304-05 (1994). Mr. Garrison, by contrast, still possesses his cartoons.

Moreover, any such claim is preempted by Section 301 of the Copyright Act. These claims are "simply . . . copyright infringement claim[s] dressed in state-law clothing." *Christen v. iParadigms, LLC*, No. 1:10-cv-620, 2010 WL 3063137, at *2 (E.D. Va. Aug. 4, 2010); *see also Brittle v. Warner Bros. Entm't, Inc.*, No. 3:16-cv-00908, 2017 WL 11503437, at *3 (E.D. Va. Aug. 28, 2017) (dismissing conversion and trespass to chattels claims as preempted under the Copyright Act). To the extent that Mr. Garrison asserts that ADL wrongfully reproduced the Rothschilds Cartoon or the doctored Federal Reserve cartoon in its online articles commenting on them, he is seeking to hold ADL "liable for encroaching on one of the exclusive rights granted by the Copyright Act – i.e., the right to use and reproduce the copyrighted work." *Christen*, 2010 WL 3063137, at *2 (citing *Trandes Corp. v. Guy F. Atkinson*, 996 F.2d 655, 660 (4th Cir. 1993)). The Copyright Act preempts these claims. *See, e.g., OpenRisk, LLC v. MicroStrategy Servs. Corp.*,

876 F.3d 518, 524 (4th Cir. 2017) ("[W]hen a conversion claim . . . rests on an allegation of wrongful copying and distribution of intellection property, it is 'equivalent' to a copyright infringement claim and thus preempted under the Copyright Act."); *Trandes Corp.*, 996 F.2d at 659 (stating that allegations of "mere reproduction" are insufficient to avoid preemption by the Copyright Act); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 536 (E.D. Va. 2005) ("The Court grants Defendant's motion to dismiss the conversion claim because Plaintiff alleges no physical object was unlawfully retained by Defendant."); *see also U.S. ex rel. Berge v. Bd. of Trs. of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (Section 301 "will preempt a conversion claim where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work").  Accordingly, this Court should dismiss the conversion and trespass to chattels claims for the independent reason that they are preempted by the Copyright Act.

Finally, Mr. Garrison cannot assert a separate cause of action for a permanent injunction (Count IV); this is simply a form of relief.  *See, e.g.*, *Halzack Watkins v. Educ. Credit Mgmt. Corp.*, No. 2:10-cv-540, 2011 WL 2015479, at *5 (E.D. Va. May 12, 2011) (cause of action for "temporary and permanent injunction" does not "present [a] cause[ ] of action under any Virginia (or other state's) law").  Nor does he come anywhere close to offering a basis for the extraordinary remedy of enjoining constitutionally protected speech.  This claim, like the others, should therefore be dismissed.

## CONCLUSION

For the reasons set forth above, ADL respectfully requests that this Court dismiss the Complaint for lack of personal jurisdiction and/or for improper venue or, in the alternative, transfer it to the District Court for the District of Columbia.  Should this Court reach the merits, ADL

respectfully requests that the Complaint be dismissed in its entirety with prejudice for failure to state a claim.

Dated: November 30, 2020

Respectfully submitted,

*/s/ Patrick John Curran Jr.*
Patrick John Curran Jr. (VA Bar No. 86144)
Nathan Siegel (*pro hac vice* pending)
Alison Schary (*pro hac vice* pending)
1301 K Street, NW, Suite 500 East
Washington, DC  20005
Ph: 202-973-4200
Fax: 202-973-4499
patcurran@dwt.com
nathansiegel@dwt.com
alisonschary@dwt.com
*Counsel for Defendant Anti-Defamation League*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record on the 30th day of November, 2020 via use of the Court's ECF system and email.

> Steven S. Biss
> 300 West Main Street, Suite 102
> Charlottesville, VA  22903
> stevenbiss@earthlink.net

> */s/ Patrick John Curran Jr.*
> Patrick John Curran Jr.

35