**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

BEN GARRISON,                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
v.                                               )     Case No.:  3:20-cv-00040-GEC
                                                 )
ANTI-DEFAMATION LEAGUE,                          )
                                                 )
                    Defendant.                   )
_____ )

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER**
**VENUE OR TRANSFER TO THE DISTRICT OF COLUMBIA,**
**OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

DAVIS WRIGHT TREMAINE LLP
Patrick John Curran Jr. (VA Bar No. 86144)
Nathan Siegel (*pro hac vice*)
Alison Schary (*pro hac vice*)
1301 K Street, NW, Suite 500 East
Washington, DC  20005
Ph: 202-973-4200
Fax: 202-973-4499
patcurran@dwt.com
nathansiegel@dwt.com
alisonschary@dwt.com
*Counsel for Defendant Anti-Defamation League*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.  PLAINTIFF HAS FAILED TO SHOW THAT THIS COURT HAS
    JURISDICTION OVER ADL .................................................................................... 2

    A.  Plaintiff Has Not Come Close to Establishing General Jurisdiction ...................... 2

    B.  Plaintiff Has Not Identified a Valid Basis for this Court to Exercise
        Specific Jurisdiction Over ADL........................................................................... 5

II.  VENUE IS NOT PROPER IN VIRIGINA...................................................................... 6

III.  IN THE ALTERNATIVE, TRANSFER IS PROPER UNDER 28 U.S.C. § 1406 ............ 7

IV.  EVEN IF PLAINTIFF'S SUIT COULD BE ADJUDICATED IN THIS COURT,
     HIS CLAIMS FAIL ON THE PLEADINGS AS A MATTER OF LAW......................... 7

    A.  ADL'S Criticism of the Rothschilds Cartoon as "Anti-Semitic" Is
        Constitutionally Protected Opinion...................................................................... 7

    B.  None of the Other "Statements" the Complaint Identifies Are Actionable .......... 10

    C.  The Complaint Also Fails to Plausibly Plead Actual Malice .............................. 11

    D.  Plaintiff Cannot Rescue His Failed Claims for Conversion or Trespass.............. 14

CONCLUSION...................................................................................................................... 15

4822-6138-6965v.6 0116649-000001

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Affinity Memory & Micro, Inc. v. K&Q Enters.*,
　20 F. Supp. 2d 948 (E.D. Va. 1998) ........................................................................7

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
　293 F.3d 707 (4th Cir. 2002) ..................................................................................5

*Arpaio v. Zucker*,
　414 F. Supp. 3d 84 (D.D.C. 2019) ........................................................................14

*BASF Plant Science, LP v. Commonwealth Scientific & Industrial Research
　Organization*,
　No. 2:17-cv-503, 2019 WL 2017541 (E.D. Va. May 7, 2019) .................................4

*Biro v. Condé Nast*,
　807 F.3d 541 (2d Cir. 2015) ..................................................................................14

*Blue Ridge Bank v. Veribanc, Inc.*,
　755 F.2d 371 (4th Cir. 1985) ..............................................................................5, 6

*BNSF Ry. Co. v. Tyrrell*,
　137 S. Ct. 1549 (2017) ........................................................................................3, 4

*Chefs' Warehouse, Inc. v. Wiley*,
　No. 18-CV-11263 (JPO), 2019 WL 4640208 (S.D.N.Y. Sept. 24, 2019) .................8

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
　711 F. Supp. 2d 626 (E.D. Va. 2010) .....................................................................7

*Cozzarelli v. Inspire Pharms. Inc.*,
　549 F.3d 618 (4th Cir. 2008) ................................................................................15

*Crozier for A.C. v. Westside Community School District*,
　973 F.3d 882 (8th Cir. 2020) ..................................................................................8

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014) ......................................................................................2, 3, 4

*Doe #1 v. Syracuse Univ.*,
　468 F. Supp. 3d 489 (N.D.N.Y. 2020) .....................................................................9

*Fidrych v. Marriott Int'l, Inc.*,
　952 F.3d 124 (4th Cir. 2020) ..................................................................................5

ii

*Glynn v. EDO Corp.*,
    536 F. Supp. 2d 595 (D. Md. 2008) ........................................................................6

*Gubarev v. BuzzFeed, Inc.*,
    253 F. Supp. 3d 1149 (S.D. Fla. 2017) ..................................................................6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ...............................................................................................13

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020) ......................................................................................8

*Lokhova v. Halper*,
    441 F. Supp. 3d 238 (E.D. Va. 2020), *appeals filed*, No. 20-1368
    (4th Cir. Mar. 30, 2020) and No. 20-1437 (4th Cir. Apr. 15, 2020) .......................10

*Marsh v. Va. Dep't of Transp.*,
    No. 6:14-CV-00006, 2014 WL 6833927 (W.D. Va. Dec. 3, 2014) ...........................3

*Maxient, LLC v. Symplicity Corp.*,
    63 F. Supp. 3d 592 (E.D. Va. 2014) ......................................................................15

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ...........................................................................13, 14

*McDonald v. Wise*,
    769 F.3d 1202 (10th Cir. 2014) .............................................................................14

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ...............................................................................14

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) .................................................................................14

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ...................................................................................12

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) .................................................................................................3

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) .................................................................................14

*Quigley v. Rosenthal*,
    327 F.3d 1044 (10th Cir. 2003) ...............................................................................8

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ...................................................................................14

iii

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ........................................................................9

*Verosol B.V. v. Hunter Douglas, Inc.*,
    806 F. Supp. 582 (E.D. Va. 1992) ...............................................................7

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) .......................................................................5

**State Cases**

*Herlihy v. Metro. Museum of Art*,
    214 A.D.2d 250 (N.Y. App. Div. 1995) .......................................................8

*Jones v. City of Phila.*,
    893 A.2d 837 (Pa. Commw. Ct. 2006) .........................................................9

*Rety v. Green*,
    546 So. 2d 410 (Fla. 3d DCA 1989) .............................................................8

*Russell v. Davies*,
    97 A.D.3d 649 (N.Y. App. Div. 2012) .........................................................9

*Schermerhorn v. Rosenberg*,
    73 A.D.2d 276 (N.Y. App. Div. 1980) .........................................................8

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (N.Y. App. Div. 2015) .....................................................9

*Stuart v. Anti-Defamation League of B'Nai B'Rith*,
    127 N.Y.S.2d 362 (Sup. Ct. N.Y. Cty. 1953) ..............................................8

*Tech Plus, Inc. v. Ansel*,
    793 N.E.2d 1256 (Mass. App. 2003) ............................................................8

*Witt v. Reynolds Metals Co.*,
    240 Va. 452, 397 S.E.2d 873 (1990)............................................................2

**Federal Statutes**

28 U.S.C. § 1404.............................................................................................7

28 U.S.C. § 1406.........................................................................................6, 7

**State Statutes**

Va. Code § 18.2-152.3(3) .............................................................................15

Va. Code § 19.2-154.4(A)(5) ........................................................................15

iv

Defendant Anti-Defamation League ("ADL" or "Defendant") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and/or for Improper Venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Mr. Garrison, a "politically incorrect" political cartoonist, drew a cartoon three years ago depicting U.S. government officials as puppets controlled by the Jewish financier George Soros and the Rothschilds, a Jewish banking family that has been at the center of anti-Semitic conspiracy theories for more than a century. Widely panned as an anti-Semitic cartoon, he brought this suit because ADL dared to criticize it as "blatantly anti-Semitic." But as ADL explained in its opening brief ("MOL"), this suit does not belong in Virginia, and even if it could be pursued here, Mr. Garrison fails to state any claim for relief.

His opposition brief ("Opp.") does not even acknowledge, much less respond to, most of ADL's arguments and the well-established body of case law supporting them. First, Mr. Garrison identifies no basis for asserting jurisdiction in Virginia over ADL. His complaint did not allege a single link to Virginia, and, at most, his opposition brief points to a handful of generic contacts that are exactly what the Supreme Court and the Fourth Circuit have repeatedly held cannot establish jurisdiction. Plaintiff acknowledges that if jurisdiction is lacking, venue is improper as well, so this Court should either dismiss the case or transfer it to the District Court for the District of Columbia or the Southern District of New York.

Alternatively, even if this Court could reach the merits of Mr. Garrison's case, his claims fail as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6). As ADL explained in its opening brief,

1

its criticism of the Rothschilds' Cartoon as "anti-Semitic" is constitutionally protected opinion and Mr. Garrison – a limited-purpose public figure – has not pleaded anything that remotely approaches the high bar of actual malice.  Mr. Garrison's opposition offers no rejoinder to the well-established legal precedent in ADL's motion, and instead cites cases which have nothing to do with expressing opinions about published works.   Moreover, many of his claims are independently subject to dismissal because they are time-barred and/or not statements by ADL – which Mr. Garrison does not even dispute in his opposition.  Mr. Garrison's remaining claims, for conversion and trespass to chattels, meet a similar fate.

In sum, one way or another, Mr. Garrison's case does not belong in this Court.  It should either be dismissed outright or transferred to a proper venue where it can be dismissed on the merits.

## ARGUMENT

## I. PLAINTIFF HAS FAILED TO SHOW THAT THIS COURT HAS JURISDICTION OVER ADL

### A. Plaintiff Has Not Come Close to Establishing General Jurisdiction

Mr. Garrison's Opposition begins by baldly misstating the constitutional standard for exercising general jurisdiction over a foreign corporate entity.  He acknowledges that ADL is domiciled in the District of Columbia with its principal place of business in New York, Compl. ¶ 9, but then relies on a 1990 decision to maintain that "conduct[ing] significant business in a forum" alone suffices to establish general jurisdiction.  *See Witt v. Reynolds Metals Co.*, 240 Va. 452, 455, 397 S.E.2d 873, 875 (1990) (cited in Opp. at 8).  That is simply incorrect.  The Supreme Court's 2014 decision in *Daimler AG v. Bauman* expressly disapproved of "the exercise of general jurisdiction in every State in which a corporation "engages in a substantial,

continuous, and systematic course of business."  571 U.S. 117, 138 (2014) (internal quotation marks omitted).

Rather, the Supreme Court has repeatedly clarified that "[t]he 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 139 n.19.  An entity may be found to be "at home" elsewhere only "in an exceptional case."  *Id.* (citing *Daimler*, 571 U.S. at 139 n.19).  To illustrate what it meant by an "exceptional" case, the Court pointed to a company in the Philippines that was found subject to jurisdiction in Ohio because, during World War II, it was forced to completely evacuate the island and temporarily relocate its headquarters to Ohio.  *Id.* (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).

None of the sporadic contacts between ADL and Virginia Mr. Garrison points to in his Opposition even remotely rise to the level of such an exceptional case.  His Opposition contains links to Form 990 filings listing two Virginia-based independent contractors retained by ADL, *amicus curiae* briefs to federal and state courts in the Commonwealth filed by ADL and reporting by ADL on events that took place in Virginia such as the Unite the Right rally in Charlottesville.  Opp. at 9.  Even if the Court were to consider any of those "facts,"[1] none of those contacts would render ADL "at home" in Virginia.  Indeed, the same sources to which Mr.

---

[1] Mr. Garrison has not attached any affidavits to his Opposition to substantiate these allegations, and none of them are found in the Complaint.  He many not try to add additional jurisdictional facts to his Complaint in this manner.  *See Marsh v. Va. Dep't of Transp.*, No. 6:14-CV-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.  To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.") (citation omitted).  In any event, even if credited none of the facts Mr. Garrison points to support the exercise of general jurisdiction.

Garrison points show that ADL contracts with entities in multiple states, maintains 27 offices around the country (but none allegedly in Virginia), has filed amicus briefs in most jurisdictions,[2] and reports about events related to bigotry and anti-Semitism wherever they may occur.[3]  Indeed, the type of contacts Mr. Garrison points to *preclude* the exercise of jurisdiction over ADL here, because a "corporation that operates in many places can scarcely be deemed at home in all of them."  *BNSF Ry Co.*, 137 S. Ct. at 1549 (quoting *Daimler*, 571 U.S. at 139 n.20).

Finally, Mr. Garrison's reliance on *BASF Plant Science, LP v. Commonwealth Scientific & Industrial Research Organization*, No. 2:17-cv-503, 2019 WL 2017541 (E.D. Va. May 7, 2019) merely underscores why there is no basis for jurisdiction here.  In *BASF*, the court found that Cargill was subject to general jurisdiction in Virginia because it "employ[ed] 1,800 employees, owns land in Virginia . . . is registered to do business here, and maintains business locations throughout the Commonwealth."  *Id.* at *3.  Even assuming that such facts could be a basis for exercising jurisdiction, nothing the Complaint or the Opposition points to come close to those described in *BASF*.  *Cf. BNSF Ry Co.*, 137 S. Ct. at 1549 (fact that defendant corporation "has over 2,000 miles of railroad track and more than 2,000 employees in Montana" did not subject it to general jurisdiction there).

---

[2] For example, in 2019 and 2020 alone, ADL filed amicus briefs in almost every federal appellate court; federal district courts in California, New York, Maryland, Texas, Virginia, and D.C.; and state courts in Florida, North Carolina, and Texas.  *See* https://www.adl.org/education-and-resources/resource-knowledge-base/amicus-brief-database.

[3] *See, e.g.*, https://www.adl.org/blog/ny-jewish-high-schools-website-defaced-with-neo-nazi-imagery-driver-shouted-antisemitic-slurs (reporting about anti-Semitic incidents in New York and Kentucky); https://www.adl.org/blog/new-jersey-police-investigate-dead-pig-outside-rabbis-home-jewish-groups-call-out-retailers (reporting about anti-Semitic incidents in New Jersey and Massachusetts); https://www.adl.org/news/press-releases/adl-statement-on-fatal-police-shooting-of-andre-hill (statement condemning police shooting in Columbus, Ohio); https://www.adl.org/news/press-releases/adl-welcomes-verdict-in-halle-germany-synagogue-attack (statement welcoming verdict against white supremacist who attacked synagogue in Germany).

4

Accordingly, there is no basis for this Court to exercise general jurisdiction over ADL.

**B.      Plaintiff Has Not Identified a Valid Basis for this Court to Exercise Specific Jurisdiction Over ADL**

Mr. Garrison similarly fails to establish a basis for specific jurisdiction in his Opposition. He does not even attempt to identify any specific nexus between the Commonwealth and the facts alleged in his Complaint, and he completely ignores the standard for establishing specific jurisdiction against online publishers established by the Fourth Circuit in *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002).  Instead, Mr. Garrison trots out the very theory that the Fourth Circuit has consistently rejected:  that the mere fact that ADL operates a website generally available to the public, including in Virginia along with every other state, subjects it to jurisdiction in the Commonwealth.  It is well settled that "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).  The fact that a Virginia citizen could read the statements at issue does not give rise to specific jurisdiction; specific jurisdiction is inappropriate when an interactive website is accessible to all but does not target residents of the forum state in particular.  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020).  As ADL established in its opening brief, the Complaint does not show that ADL "manifest[ed] an intent to target and focus on Virginia readers" with any of the publications at issue.  *Young*, 315 F.3d at 263.  *See* MOL at 10-14.

Here too, the very cases cited by Mr. Garrison demonstrate why specific jurisdiction is lacking here.  In *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371 (4th Cir. 1985), the Fourth Circuit found that the exercise of personal jurisdiction was appropriate because the allegedly defamatory article at issue was published in a Virginia newspaper; there was evidence that the

defendant specifically targeted customers in Virginia; and the plaintiff was located in Virginia and suffered its alleged injury there.  *Id.* at 372-73.  In other words, "*Blue Ridge Bank* represents nothing more than a classic case of specific jurisdiction based on an instate injury and relationship between defendant and the occurrence of the injury."  *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 606 n.13 (D. Md. 2008).  In *Gubarev v. BuzzFeed, Inc.*, 253 F. Supp. 3d 1149 (S.D. Fla. 2017), the court found jurisdiction because one of the plaintiffs was a Florida corporation and therefore the allegedly defamatory statements had "a direct impact on a Florida resident."  *Id.* at 1159.  No similar facts are present here: Mr. Garrison lives in Montana and there is not a single allegation in the Complaint linking any of its operative facts to parties, events or damages located in Virginia.  Nor does Mr. Garrison even attempt to explain how the exercise of jurisdiction would satisfy constitutional due process requirements, beyond a simply conclusory recitation that "[t]he exercise of specific personal jurisdiction over [ADL] is constitutionally reasonable."  Opp. at 12.

In sum, there is simply no connection between Virginia and this action.  Because the Court lacks personal jurisdiction over ADL, this case must be dismissed or, in the alternative, transferred as set forth in Section III below.

## II.    VENUE IS NOT PROPER IN VIRIGINA

Mr. Garrison's argument that venue is proper in Virginia rises and falls with his argument that ADL is subject to personal jurisdiction in Virginia.  Since this Court lacks personal jurisdiction over ADL, venue is therefore improper as well and dismissal is warranted under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

## III.     IN THE ALTERNATIVE, TRANSFER IS PROPER UNDER 28 U.S.C. § 1406

In the alternative, if the Court believes that dismissal is inappropriate, the case should be

transferred to one of the jurisdictions that has personal jurisdiction over ADL – the District Court

for the District of Columbia or the Southern District of New York – pursuant to 28 U.S.C.

§ 1406(a).[4]  Mr. Garrison Opposition argues that transfer is inappropriate under 28 U.S.C.

§ 1404, but ADL did not seek transfer pursuant to § 1404.  That statute only applies to actions

*where venue is proper*; since venue is not proper in Virginia, § 1404 does not apply.  *Compare*

28 U.S.C. § 1404(a), *with* 28 U.S.C. § 1406(a); *see also Convergence Techs. (USA), LLC v.*

*Microloops Corp.*, 711 F. Supp. 2d 626, 640 (E.D. Va. 2010).  Rather, if the Court finds that

jurisdiction (and therefore venue) is lacking, it may either dismiss the case or transfer it pursuant

to § 1406(a).  *See Affinity Memory & Micro, Inc. v. K&Q Enters.*, 20 F. Supp. 2d 948, 954 (E.D.

Va. 1998); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 594 (E.D. Va. 1992).

## IV.     EVEN IF PLAINTIFF'S SUIT COULD BE ADJUDICATED IN THIS COURT, HIS CLAIMS FAIL ON THE PLEADINGS AS A MATTER OF LAW

Even if jurisdiction and venue were proper, the Complaint should be dismissed with

prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### A.     ADL'S Criticism of the Rothschilds Cartoon as "Anti-Semitic" Is Constitutionally Protected Opinion

As set forth in ADL's motion, it is well settled that criticizing someone's speech or

actions as "anti-Semitic" (or racist, bigoted, etc.) is constitutionally protected opinion.  MOL at

17-21.  Mr. Garrison's opposition does not even attempt to distinguish the consistent case law

cited in ADL's brief.  Instead, the Opposition cites a series of cases that it contends stand for the

---

[4] Mr. Garrison admits that the District Court for the District of Columbia would be a proper venue for this action.  Opp. at 14 n.7.

proposition that making *any* accusation of "anti-Semitic and racist conduct" is actionable.  Opp. at 29-30.

But the cases Mr. Garrison cites do not support that broad proposition at all.  Rather, Mr. Garrison misconstrues the underlying legal principle in all of the cases he cites: *none* of them stands for the proposition that characterizing someone's *undisputed* conduct as "anti-Semitic" or "racist" is actionable defamation.  Instead, they make the unremarkable point that *falsely attributing specific conduct* to someone can give rise to a defamation claim, since whether that person said or did the specific thing they are accused of would be a matter of verifiable fact.  *See, e.g.*, *La Liberte v. Reid*, 966 F.3d 79, 84 (2d Cir. 2020) (defendant's social media post "could be interpreted as accusing La Liberte of engaging in specific racist conduct, which is a provable assertion of fact and therefore actionable") (emphasis added); *Chefs' Warehouse, Inc. v. Wiley*, No. 18-CV-11263 (JPO), 2019 WL 4640208, at *9 (S.D.N.Y. Sept. 24, 2019) (defendant alleged plaintiff had a "policy" or "history" of "supporting racist business practices"); *Quigley v. Rosenthal*, 327 F.3d 1044, 1059-60 (10th Cir. 2003) (plaintiff allegedly "engaged in anti-Semitic harassment" against Jewish neighbors); *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 254, (N.Y. App. Div. 1995) (plaintiff allegedly made anti-Semitic statements); *Rety v. Green*, 546 So. 2d 410, 414 (Fla. 3d DCA 1989) (same); *Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 284 (N.Y. App. Div. 1980) (plaintiff allegedly made anti-Semitic and racist statements); *Tech Plus, Inc. v. Ansel*, 793 N.E.2d 1256, 1265-66 (Mass. App. 2003) (defendant alleged that plaintiff "told anti-Semitic jokes in his presence" and was "constantly persecuting him" for being Jewish); *Stuart v. Anti-Defamation League of B'Nai B'Rith*, 127 N.Y.S.2d 362, 363-64 (Sup. Ct. N.Y. Cty. 1953) (plaintiff was allegedly 'being subsidized' in the performance of his office as editor" by a known

8

anti-Semite).[5]  In all of these cases, the provably false "fact" was whether the defendant engaged

in the alleged conduct in the first place – *not* whether that conduct was appropriately criticized as

"anti-Semitic" or "racist."

Here, the underlying conduct is undisputed: Mr. Garrison drew the Rothschilds Cartoon,

which depicted government officials as "puppets" controlled by financiers who are Jewish and

historically the subject of anti-Semitic tropes.  Compl. ¶ 2.  Indeed, Mr. Garrison's Opposition

expressly acknowledges that "as factual support for that horrible misrepresentation, Defendant

pointed to Plaintiff's cartoons."  Opp. at 31.  But that is the very point; whether one agrees with

ADL's view that the cartoon is "anti-Semitic," or with Mr. Garrison's view that critique is a

"horrible misrepresentation," is inherently a matter of opinion.  Numerous cases have held that

criticism of specific words, writings, videos, or other works as "anti-Semitic" is constitutionally

protected opinion, and the same reasoning applies to ADL's critique of the Rothschilds Cartoon.

*See Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1438-39 (9th Cir. 1995) (where

only verifiable facts were that judge had sanctioned three lawyers who were Jewish – none of

which was disputed – "Yagman's personal belief that Judge Keller is anti-Semitic" based on

those true facts was protected opinion).  *See also, e.g.*, *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d

489, 512 (N.D.N.Y. 2020) (description of videos from fraternity event as "racist, anti-semitic,

homophobic, sexist, and hostile to people with disabilities" was nonactionable opinion); *Russell

v. Davies*, 97 A.D.3d 649, 650 (N.Y. App. Div. 2012) (criticism of plaintiff's essay as "racist"

---

[5] *Crozier for A.C. v. Westside Community School District*, 973 F.3d 882, 891 (8th Cir. 2020), is not a
defamation case; it concerned whether parents had standing to bring a First Amendment retaliation claim
against a teacher on behalf of their minor child, and the court therefore did not consider whether it would
be actionable defamation to criticize someone as "racist."  But even if it were a defamation case, the fact
pattern involved a teacher who had allegedly falsely described a student as using the "n-word"; in other
words, attributing *specific, racist conduct* to the student that could be proven true or false.

9

and "anti-Semitic" was nonactionable opinion); *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (N.Y. App. Div. 2015) (criticism of plaintiff's writings as "racist" was nonactionable opinion); *Jones v. City of Phila.*, 893 A.2d 837, 845 (Pa. Commw. Ct. 2006) (criticism of plaintiff's statement as an "anti-Semitic" "slur" was protected opinion). Indeed, crediting Mr. Garrison's theory of liability would prevent ADL from fulfilling its mission as an organization dedicated to combating hate and anti-Semitism, since it would effectively ban *anyone* from calling out speech and conduct as "anti-Semitic" and explaining why it is offensive, as ADL did in its 2017 Article.[6]

### B.   None of the Other "Statements" the Complaint Identifies Are Actionable

Mr. Garrison's Opposition does not dispute that most of the Complaint's allegedly "defamatory statements" are either time-barred or were not made by ADL in the first place. *See* MOL at 27-31; Curran Decl. Exs. 2, 6-10, 13-17). As ADL pointed out in its brief, the *only publications* allegedly by ADL within the one-year statute of limitations that Mr. Garrison challenged as defamatory are the July 11, 2019 ADL News Item (Curran Decl. Ex. 3); a few words from the caption accompanying the July 10, 2019 "doctored cartoon" in the Explainer (Curran Decl. Ex. 5); ADL's July 14, 2019 tweet sharing a link to the 2019 News Item (Curran Decl. Ex. 11); and a December 7, 2019 tweet criticizing the Rothschilds Cartoon (Curran Decl. Ex. 12). With respect to posts by third parties linking to or quoting from the 2017 ADL Article about the Rothschilds Cartoon, ADL is not liable for the third-party posts and Mr. Garrison offers no argument to the contrary. *See Lokhova v. Halper*, 441 F. Supp. 3d 238, 257 (E.D. Va.

---

[6] In a bit of particularly contorted logic, Mr. Garrison complains that criticizing his cartoon as "anti-Semitic" is a form of "hate speech" and insists that to hold that describing something as "anti-Semitic" is constitutionally protected opinion would "gut [] the entire mission of the Anti-Defamation League" – notwithstanding that calling out anti-Semitism is ADL's *raison d'etre*. Opp. at 4.

2020) (third-party comments, links, and tweets of previously published articles "do not constitute republication for which the original publisher can be held liable"), *appeals filed*, No. 20-1368 (4th Cir. Mar. 30, 2020) and No. 20-1437 (4th Cir. Apr. 15, 2020).  And even if that were not so, any republication of ADL's criticism of the Rothschilds Cartoon would not be actionable because the underlying critique itself is protected opinion.

Finally, Plaintiff all but abandons his contention that what he characterizes as the "doctored cartoon" in the Explainer is actionable, offering only the single conclusory assertion that  ADL's "statements in the doctored cartoon" are actionable because "they falsely attribute to Plaintiff views he does not have and statements he never made."  Opp. at 31.  Plaintiff nowhere explains what "statements" or "views" he is referring to, and the only allegedly false statement pleaded in the Complaint is just a fragment of the first sentence of the caption below the image: "[w]hite supremacists and other extremists frequently spread anti-Semitic memes, such as the image above."  Compl. ¶ 17.  As ADL's Motion explained, viewed as a whole the caption states that this cartoon is a "doctored" image shared by white supremacists, and further states that the original cartoon (signed by Mr. Garrison) had "no antisemitic intent."  MOL at 31. Plaintiff offers no response, which plainly requires dismissal.

### C.    The Complaint Also Fails to Plausibly Plead Actual Malice

Plaintiff's defamation claim may also be dismissed because the Complaint fails to plausibly plead that any of the publications at issue were published by ADL with actual malice.

As a preliminary matter, ADL demonstrated in its opening brief that Mr. Garrison is clearly a limited-purpose public figure in this suit, which concerns criticism of a cartoon critiquing government officials and the response to his invitation to a White House event honoring prominent figures in social media.  *See* MOL at 21-24.  In his opposition brief,

11

Mr. Garrison merely asserts that having a website and drawing cartoons "about matters of public concern" does not make a person a public figure.  Opp. at 28 & n.28, 31.  That might be so for cartoon hobbyists, but it is certainly not so for a cartoonist whose self-described "high impact political art to expose the corruption of the Deep State and their enablers, the Fake News Media" has an audience of "millions of people around the world," "generate[s] millions of monthly impressions on social media," and is the subject of a book and multiple media interviews.  Curran Decl. Ex. 1; Compl. ¶ 8.  Mr. Garrison's cartoons, including the Rothschilds Cartoon, offer "high impact" criticism of the government and its highest officials.  The performance and integrity of government is unquestionably a subject of public controversy, and Mr. Garrison is therefore a limited public figure for purposes of critiquing the political views his cartoons express.

Turning to the element of actual malice, with respect to the Rothschilds Cartoon Mr. Garrison first claims that ADL knew from unspecified "prior reporting" that he was "not anti-Semitic."  Opp. at 32.  But ADL already addressed this argument in its opening brief, which Mr. Garrison fails to acknowledge, much less respond to.  *See* MOL at 25-26.  The 2017 ADL Article explicitly made the point that while in the past Plaintiff had complained that other cartoons were manipulated by anti-Semites, the 2017 Rothschilds Cartoon was different than those previous cartoons because it was unquestionably drawn and displayed by Plaintiff himself. That hardly demonstrates that ADL "knew" his 2017 Rothschilds Cartoon was not anti-Semitic.[7] By contrast, *Palin v. New York Times Co.*, 940 F.3d 804, 813-14 (2d Cir. 2019), cited by

---

[7] Moreover, the 2019 News Item linked to an article that included Mr. Garrison's defense of his cartoon from the backlash – claiming that the Rothschilds influence was a matter of "historical fact," that critique of his cartoon as anti-Semitic was intended to "silence" his legitimate criticism of Soros and the Rothschilds, and that he had "Jewish friends who will vouch that he is not anti-Semitic."  Curran Decl. Ex. 4.

Plaintiff, involved an editorial published in 2017 that contained allegedly defamatory statements about an event that happened long in the past (the 2011 Gabrielle Giffords shooting), but the editorial's description of that event contradicted its own reports about it in 2011.

Mr. Garrison also claims that actual malice should be inferred because ADL "continued to publish the false defamatory statements to the broadest possible audience online and via Twitter out of a desire to hurt Plaintiff" and with "an egregious disregard for the truth." Opp. at 33-34. It is unclear what this even means; to the extent Mr. Garrison is suggesting that publishing something online multiple times is *prima facie* evidence of actual malice, that is obviously not a sound legal proposition. To the extent he is trying to assert some general malice or ill will by ADL toward him, that does not suffice to plausibly plead of actual malice. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) ("[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term."); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (affirming dismissal for failure to plead actual malice because "allegations that the [defendants] intended to harm [plaintiff] . . . simply do not suggest that [defendants] knew their statements were false or that they were reckless with respect to their veracity").

Finally, Plaintiff asserts that ADL "intentionally doctored a cartoon" and attributed to Plaintiff the views expressed in the cartoon. Opp. at 32-33. But it is Plaintiff's Opposition which "doctors" ADL's publication to make this patently implausible allegation, because it reproduces only the cartoon, without the accompanying caption. Opp. at 32. The caption explicitly informs the reader that this image is a "doctored version of a cartoon that originally had no antisemitic intent" which "has appeared on numerous conspiratorial web sites" frequented

13

by white supremacists – in other words, it clearly states that this is not the original cartoon, and that it had been altered by third parties and shared on the Internet.[8]

Mr. Garrison's utter failure to plead any facts that could support actual malice is fatal to his case, and he is not entitled to "pry open the gates of discovery" based on such insufficient allegations.  *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) (dismissing defamation claim for failure to plausibly plead actual malice).  Far from automatically being "a question of fact for the Jury" (Opp. at 34), courts routinely grant motions to dismiss where, as here, the plaintiff fails to plausibly plead facts that could establish a basis for actual malice.  *See, e.g., Mayfield*, 674 F.3d at 377; *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958-59 (8th Cir. 2020); *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013).  Because he has failed to plausibly allege any facts that could demonstrate actual malice, his claims must be dismissed.

### D.      Plaintiff Cannot Rescue His Failed Claims for Conversion or Trespass

As a matter of Virginia law, Mr. Garrison cannot state a claim for conversion or trespass to chattels because merely reproducing or commenting on a widely published cartoon does not deprive the author of the possession or use of the cartoon.  None of Mr. Garrison's cases (most of

---

[8] As ADL noted in its Motion, Mr. Garrison has given numerous interviews about how this and other cartoons have been doctored by 4chan-linked internet trolls, and this cartoon in particular was altered more than a decade ago.  MOL at 31 n.12.  That Mr. Garrison persists in making this knowingly false allegation to the Court is disturbing, and ADL reserves its rights to seek sanctions pursuant to Rule 11 and any other applicable laws.  In any event, the Complaint is subject to dismissal for all the reasons set forth in ADL's Motion and this Reply.

14

which simply recite elements of the claims) are to the contrary.  While conversion claims may

apply to "intangible" property rights in cases involving theft of trade secrets or other confidential

information, all the cases cited by Mr. Garrison involve circumstances where documents or

electronic materials were physically copied or taken from the owner in a manner that deprived

the owner of its use.  No such circumstances are presented here, and Mr. Garrison does not

identify a single case allowing a conversion (or trespass to chattels) claim in response to a

defendant reproducing or commenting on a plaintiff's published work.

In any event, Mr. Garrison offers no meaningful response at all to the wealth of authority

holding that any claim for conversion or trespass to chattels premised on reproducing a

copyrighted work would be preempted by the Copyright Act.  MOL at 32-33.  For all these

reasons, the claims for conversion and trespass to chattels should be dismissed.[9]

## CONCLUSION

For the reasons set forth herein and in ADL's opening brief, ADL requests that this Court

dismiss the Complaint for lack of personal jurisdiction and/or for improper venue or, in the

alternative, transfer it to the District Court for the District of Columbia.  Should this Court reach

---

[9] Mr. Garrison's suggestion, via footnote, that he should be permitted to amend his complaint to allege various computer crimes should be rejected out of hand.  First, Mr. Garrison has not moved to amend his complaint (as Rule 15 requires), and a footnote in his opposition brief does not suffice.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) (plaintiff's request for leave to amend complaint in footnote of brief opposing motion to dismiss "did not qualify as [a] motion[] for leave to amend").  In any event, amendment would be futile; the statutes cited by Mr. Garrison are about computer fraud and hacking, which have absolutely no relevance to the operative facts in this case.  Moreover, the case he cites is of no help to him: in *Maxient*, the court found that the plaintiff's claims (which concerned unauthorized access to trade secrets, far afield from any allegation in this case) under Va. Code § 18.2-152.3(3) *were* preempted by the Copyright Act.  *Maxient, LLC v. Simplicity Corp.*, 63 F. Supp. 3d 592, 598-99 (E.D. Va. 2014).  The *Maxient* court did not address Va. Code § 19.2-154.4(A)(5) at all, which concerns using a computer to cause "physical injury" to someone else's property and is of no relevance here.

the merits, ADL respectfully requests that the Complaint be dismissed in its entirety with

prejudice for failure to state a claim.

Dated: January 8, 2021

Respectfully submitted,

*/s/ Patrick John Curran Jr.*
Patrick John Curran Jr. (VA Bar No. 86144)
Nathan Siegel (*pro hac vice*)
Alison Schary (*pro hac vice*)
1301 K Street, NW, Suite 500 East
Washington, DC  20005
Ph: 202-973-4200
Fax: 202-973-4499
patcurran@dwt.com
nathansiegel@dwt.com
alisonschary@dwt.com
*Counsel for Defendant Anti-Defamation League*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record on the 8th day of January, 2021 via use of the Court's ECF system and email.

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, VA  22903
stevenbiss@earthlink.net

*/s/ Patrick John Curran Jr.*
Patrick John Curran Jr.

17